436 So.2d 464 (1983)
STATE of Louisiana
v.
Brian CHISM.
No. 82-KA-0777.
Supreme Court of Louisiana.
June 27, 1983.
*466 William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., William Kelly, Asst. Dist. Atty., for plaintiff-appellee.
Wellborn Jack, Jr., Jack, Jack, Cary & Cary, Shreveport, for defendant-appellant.
DENNIS, Justice.
The defendant, Brian Chism, was convicted by a judge of being an accessory after the fact, La.R.S. 14:25, and sentenced to three years in the parish prison, with two and one-half years suspended. The defendant was placed upon supervised probation for two years. We affirm his conviction, but vacate the sentence because it is illegal. Under the Jackson v. Virginia standard, the record in this case contains legally sufficient evidence to support a trier of fact's finding of the essential elements of the charged offense. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
On the evening of August 26, 1981 in Shreveport, Tony Duke gave the defendant, Brian Chism, a ride in his automobile. Brian Chism was impersonating a female, and Duke was apparently unaware of Chism's disguise. After a brief visit at a friend's house the two stopped to pick up some beer at the residence of Chism's grandmother. Chism's one-legged uncle, Ira Lloyd, joined them, and the three continued on their way, drinking as Duke drove the automobile. When Duke expressed a desire to have sexual relations with Chism, Lloyd announced that he wanted to find his ex-wife Gloria for the same purpose. Shortly after midnight, the trio arrived at the St. Vincent Avenue Church of Christ and persuaded Gloria Lloyd to come outside. As Ira Lloyd stood outside the car attempting to persuade Gloria to come with them, Chism and Duke hugged and kissed on the front seat as Duke sat behind the steering wheel.
Gloria and Ira Lloyd got into an argument, and Ira stabbed Gloria with a knife several times in the stomach and once in the neck. Gloria's shouts attracted the attention of two neighbors, who unsuccessfully tried to prevent Ira from pushing Gloria into the front seat of the car alongside Chism and Duke. Ira Lloyd climbed into the front seat also, and Duke drove off. One of the bystanders testified that she could not be sure but she thought she saw Brian's foot on the accelerator as the car left.
Lloyd ordered Duke to drive to Willow Point, near Cross Lake. When they arrived Chism and Duke, under Lloyd's direction, removed Gloria from the vehicle and placed her on some high grass on the side of the roadway, near a wood line. Ira was unable to help the two because his wooden leg had come off. Afterwards, as Lloyd requested, the two drove off, leaving Gloria with him.
There was no evidence that Chism or Duke protested, resisted or attempted to avoid the actions which Lloyd ordered them to take. Although Lloyd was armed with a knife, there was no evidence that he threatened either of his companions with harm.
Duke proceeded to drop Chism off at a friend's house, where he changed to male clothing. He placed the blood-stained women's clothes in a trash bin. Afterward, Chism went with his mother to the police station at 1:15 a.m. He gave the police a complete statement, and took the officers to the place where Gloria had been left with Ira Lloyd. The police found Gloria's body in some tall grass several feet from that spot. An autopsy indicated that stab wounds had caused her death. Chism's discarded clothing disappeared before the police arrived at the trash bin.
An accessory after the fact is any person, who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from *467 arrest, trial, conviction, or punishment. La. R.S. 14:25.
This court has said that the statute requires that in order to convict an accused of being an accessory after the fact the state must prove that the accused acted with the specific intent to prevent the apprehension or punishment of a person he knows or has reason to believe has committed a felony. State v. Jackson, 344 So.2d 961 (La.1977). The statement in the Jackson opinion to the effect that being an accessory after the fact is a specific intent crime was erroneous and not necessary to the decision of that case. In the absence of qualifying provisions, the terms "intent" and "intentional" have reference to "general criminal intent." La.R.S. 14:11. The statute contains no provisions qualifying the term "intent", and we have no reason to believe that the legislative aim was to exclude from its ambit offenders who have a general criminal intent.[1] Accordingly, we conclude that a person may be punished as an accessory after the fact if he aids an offender personally, knowing or having reasonable ground to believe that he has committed the felony, and has a specific or general intent that the offender will avoid or escape from arrest, trial, conviction, or punishment.[2] See R.S. 14:10; State v. Jackson, supra; W. Lafave & A. Scott, Criminal Law § 66 at 522-23 (1972); R. Perkins, Criminal Law § 8.4 at 667 (2d ed. 1969).
An accessory after the fact may be tried and convicted, notwithstanding the fact that the principal felon may not have been arrested, tried, convicted, or amenable to justice. La.R.S. 14:25. However, it is still necessary to prove the guilt of the principal beyond a reasonable doubt, and an accessory after the fact cannot be convicted or punished where the principal felon has been acquitted. Id. Reporter's Comment. State v. Prudhomme 171 La. 743, 129 So. 736 (1930); State v. Philip 169 La. 468, 125 So. 451 (1929). Furthermore, it is essential to prove that a felony was committed and completed prior to the time the assistance was rendered the felon, although it is not also necessary that the felon have been already charged with the crime. La.R.S. 14:25; See Lafave & Scott, supra.
Defendant appealed from his conviction and sentence and argues that the evidence was not sufficient to support the judgment. Consequently, in reviewing the defendant's assigned error, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that (a) a completed felony had been committed by Ira Lloyd before Brian Chism rendered him the assistance described below; (b) Chism knew or had *468 reasonable grounds to know of the commission of the felony by Lloyd, and (c) Chism gave aid to Lloyd personally under circumstances that indicate either that he actively desired that the felon avoid or escape arrest, trial, conviction, or punishment or that he believed that one of these consequences was substantially certain to result from his assistance.
There was clearly enough evidence to justify the finding that a felony had been completed before any assistance was rendered to Lloyd by the defendant. The record vividly demonstrates that Lloyd fatally stabbed his ex-wife before she was transported to Willow point and left in the high grass near a wood line. Thus, Lloyd committed the felonies of attempted murder, aggravated battery, and simple kidnapping, before Chism aided him in any way. A person cannot be convicted as an accessory after the fact to a murder because of aid given after the murderer's acts but before the victim's death, but under these circumstances the aider may be found to be an accessory after the fact to the felonious assault. Lafave and Scott, supra; Clark and Marshall, Law of Crimes p. 525 (7th Ed.1967); J. Turner, Russel on Crime p. 166 (12th Ed.1964); E. Dangel, Criminal Law p. 269 (1951); W. Burdick, Law of Crime p. 302 (1946); Warren and Bilas, Warren on Homicide p. 217 (Perm Ed.1938); 2 Hawkins P.C. 448, c. 29, s. 35 (Cur.Ed.); 4 Blackstone Comm. 38. In this particular case, it is of no consequence that the defendant was formally charged with accessory after the fact to second degree murder, instead of accessory after the fact to attempted murder, aggravated battery or simple kidnapping. The defendant was fairly put on notice of the actual acts underlying the offense with which he was charged, and he does not claim or demonstrate in this appeal that he has been prejudiced by the form of the indictment. Cf. State v. Vanderhoff, 415 So.2d 190 (La.1982) State v. Pichler, 355 So.2d 1302 (La.1978).
The evidence overwhelmingly indicates that Chism had reasonable grounds to believe that Lloyd had committed a felony before any assistance was rendered. In his confessions and his testimony Chism indicates that the victim was bleeding profusely when Lloyd pushed her into the vehicle, that she was limp and moaned as they drove to Willow Point, and that he knew Lloyd had inflicted her wounds with a knife. The Louisiana offense of accessory after the fact deviates somewhat from the original common law offense in that it does not require that the defendant actually know that a completed felony has occurred. Rather, it incorporates an objective standard by requiring only that the defendant render aid "knowing or having reasonable grounds to believe" that a felony has been committed. La.R.S. 14:25, Reporter's Comment.
The closest question presented is whether any reasonable trier of fact could have found beyond a reasonable doubt that Chism assisted Lloyd under circumstances that indicate that either Chism actively desired that Lloyd would avoid or escape arrest, trial, conviction, or punishment, or that Chism believed that one of these consequences was substantially certain to result from his assistance. After carefully reviewing the record, we conclude that the prosecution satisfied its burden of producing the required quantity of evidence.
Intent, like any other fact may be proved by circumstantial evidence. La.R.S. 15:445. This is evidence of one fact, or a set of facts, from which the existence of the fact to be determined may reasonably be inferred. McCormick, Law of Evidence, p. 435 (2d ed. 1972); Prosser, Law of Torts, p. 212 (4th ed. 1971). In criminal cases, the rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.[3] La.R.S. 15:438.
*469 Circumstantial evidence involves, in addition to the assertion of witnesses as to what they have observed, a process of reasoning, or inference by which a conclusion is drawn. Like all other evidence, it may be strong or weak; it may be so unconvincing as to be quite worthless, or it may be irresistible and overwhelming. There is still no man who would not accept dog tracks in the mud against the sworn testimony of a hundred eye-witnesses that no dog passed by. The gist of circumstantial evidence, and the key to it, is the inference, or process of reasoning by which the conclusion is reached. This must be based on the evidence given, together with a sufficient background of human experience to justify the conclusion. Prosser, supra, at 212.
Consequently, before a trier of fact can decide the ultimate question of whether a reasonable hypothesis of innocence exists in a criminal case based crucially on circumstantial evidence, a number of preliminary findings must be made. In addition to assessing the circumstantial evidence in light of the direct evidence, and vice versa, the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.
In this case we conclude that the evidence is sufficient to support an ultimate finding that the reasonable findings and inferences permitted by the evidence exclude every reasonable hypothesis of innocence. Despite evidence supporting some contrary inferences, a trier of fact reasonably could have found that Chism acted with at least a general intent to help Lloyd avoid arrest because: (1) Chism did not protest or attempt to leave the car when his uncle, Lloyd, shoved the mortally wounded victim inside; (2) he did not attempt to persuade Duke, his would-be lover, exit out the driver's side of the car and flee from his uncle, whom he knew to be one-legged and armed only with a knife; (3) he did not take any of these actions at any point during the considerable ride to Willow Point; (4) at their destination, he docilely complied with Lloyd's directions to remove the victim from the car and leave Lloyd with her, despite the fact that Lloyd made no threats and that his wooden leg had become detached; (5) after leaving Lloyd with the dying victim, he made no immediate effort to report the victim's whereabouts or to obtain emergency medical treatment for her; (6) before going home or reporting the victim's dire condition he went to a friend's house, changed clothing and discarded his own in a trash bin from which the police were unable to recover them as evidence; (7) he went home without reporting the victim's condition or location; (8) and he went to the police station to report the crime only after arriving home and discussing the matter with his mother.
The defendant asserted in his statement given to the police and during trial, that he helped to remove the victim from the car and to carry her to the edge of the bushes because he feared that his uncle would use the knife on him. The defense of justification can be claimed in any crime, except murder, when it is committed through the compulsion of threats by another of death or great bodily harm and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed. La.R.S. 14:18(6). However, Chism did not testify *470 that Lloyd threatened him with death, bodily harm or anything. Moreover, fear as a motivation to help his uncle is inconsistent with some of Chism's actions after he left his uncle. Consequently, we conclude that despite Chism's testimony the trier of fact could have reasonably found that he acted voluntarily and not out of fear when he aided Lloyd and that he did so under circumstances indicating that he believed that it was substantially certain to follow from his assistance that Lloyd would avoid arrest, trial, conviction, or punishment.
For the foregoing reasons, it is also clear that the judge's verdict was warranted under the due process standard of Jackson v. Virginia, supra. There is evidence in this record from which a reasonable trier of fact could find a defendant guilty beyond a reasonable doubt. We have greater confidence in this conclusion because of our preceding analysis of the evidence. Although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. Torcia, Wharton's Criminal Evidence § 6 (13th Ed. 1972).
Therefore, we affirm the defendant's conviction. We note, however, that the sentence imposed by the trial judge is illegal. The judge imposed a sentence of three years. He suspended two and one-half of years of the term. The trial judge has no authority to suspend part of a sentence in a felony case. Compare La.C.Cr.P. art. 893(A) with art. 894(A). The correct sentence would have been a suspension of all three years of the term, with a six-month term as a condition of two years probation. See La.C.Cr.P. art. 895(B). We therefore vacate the defendant's sentence and remand the case for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.
DIXON, C.J., dissents with reasons.
BLANCHE, J., concurs and assigns reasons.
LEMMON, J., concurs subscribing to the reasoning on sufficiency of evidence and standard of appellate review, but does not necessarily agree that accessory after the fact is not a specific intent crime.
BLANCHE, Justice (concurring).
I agree with the majority's treatment of the circumstantial evidence question in this case. See particularly the text at fn. 3, and following. In adopting this view as my own, I expressly abandon the contrary view I expressed in State v. Moore, 432 So.2d 209 (La.1983). Writing for the majority in Moore, I wrote that a combining of the Jackson standard and the circumstantial evidence standard set out in LSA-R.S. 15:438 could possibly lead to an "impermissible blurring of the proper role appellate courts should assume in evaluating sufficiency claims in circumstantial evidence cases." My views at that time were based in large part upon State v. Graham, 422 So.2d 123 (La.1982), and the Moore opinion was tailored to comport in large part with the identical views expressed in State v. Shapiro, 431 So.2d 372 (La.1983), which we handed down the same day as Moore.
Upon further reflection, I am now of the view that such a dichotomy is unnecessary and confusing. Whether by direct or circumstantial evidence, any rational trier of fact, in viewing such evidence in the light most favorable to the prosecution, must conclude that the state proved the essential elements of the crime beyond a reasonable doubt; where the evidence against the defendant is circumstantial, every element is proved beyond a reasonable doubt when every reasonable hypothesis of innocence has been excluded per the mandate of LSA-R.S. 15:438. The Jackson standard is a constitutional standard gleaned from the due process clause of the 14th Amendment. R.S. 15:438 is a statutory evidentiary standardnot a constitutional standardand, as such, forms part of the inquiry in assessing the sufficiency of the evidence under *471 the Jackson standard of appellate review, i.e., exclusion of every reasonable hypothesis of innocence, where the evidence against the defendant is circumstantial, forms but part of the broader Jackson inquiry. A single standard for appellate review, comporting with the sufficiency standard established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is all that is constitutionally required. Cf. State v. Austin, 399 So.2d 158 (La.1981); State v. Moore, supra (Marcus, J. concurring); State v. Shapiro, supra (Marcus and Lemmon, JJ. concurring).
I respectfully concur.
DIXON, Chief Justice (dissenting).
I respectfully dissent from what appears to be a finding of guilt by association. The majority lists five instances of inaction, or failure to act, by defendant: (1) did not protest or leave the car; (2) did not attempt to persuade Duke to leave the car; (3) did neither (1) nor (2) on ride to Willow Point; (5) made no immediate effort to report crime or get aid for the victim; (7) failed to report victim's, condition or location after changing clothes. The three instances of defendant's action relied on by the majority for conviction were stated to be: (4) complying with Lloyd's direction to remove the victim from the car and leave the victim and Lloyd at Willow Point; (6) changing clothes and discarding bloody garments; and (8) discussing the matter with defendant's mother before going to the police station to report the crime.
None of these actions or failures to act tended to prove defendant's intent, specifically or generally, to aid defendant avoid arrest, trial, conviction or punishment.
NOTES
[1] Our recognition that La.R.S. 14:25 is a general intent offense does not pave the way for the reintroduction of the crimes of misprison or compounding a felony, since these actions would not constitute the requisite "aid" under the statute. The modern trend is a narrowing interpretation of the word "aid" in statutes imposing accessorial liability, either because the acts are de minimis are because they are justified or protected by law. See A.L.I., Model Penal Code, part 2, article 242.3, comment 4 (1980). An illustrative list of the types of "aid" contemplated by La.R.S. 14:25 appears in article 242.3 of the Model Penal Code: (1) harboring or concealing the criminal; (2) providing or aiding in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape; (3) concealing or destroying evidence of the crime, or tampering with a witness, informant, document, or other source of information, regardless of its admissibility in evidence; (4) warning the other of impending discovery or apprehension except for the purpose of bringing the other into compliance with the law, and (5) volunteering false information to law enforcement officers. See A.L.I. Model Penal Code, part 2, article 242.3 (1980).
[2] The Louisiana offense, therefore, is a compromise between the traditional common law crime of accessory after the fact, which required actual knowledge of a completed crime plus specific intent to aid the felon avoid justice, and the emerging modern trend, which recharacterizes the offense of accessory after the fact as obstruction of justice, and which dispenses with the requirement of a completed felony and knowledge of that fact by the accessory, allowing for conviction so long as the obstructive purpose is present. See A.L.I., Model Penal Code, part 2, article 242.3 and comment 3 (1980).
[3] This court has in dicta discussed whether this test adds anything to the Jackson v. Virginia standard of review. State v. Shapiro, 431 So.2d 372 (La.1983). State v. Williams, 423 So.2d 1048 (La.1982); State v. Graham, 422 So.2d 123 (La.1982). It is interesting to note that Professor McCormick, without a great deal of discussion, observed that the circumstantial evidence rule "adds little" to the strict federal test for the granting of a directed verdict: "evidence that should satisfy reasonable men beyond a reasonable doubt." McCormick, supra, at pp. 79-91. See R. Burns, Weighing Circumstantial Evidence, 2 S. Dakota L.Rev. 36, 38 (1957). See also Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).