446 So.2d 810 (1984)
STATE of Louisiana, Appellee,
v.
Eddie Lynn NASH, Appellant.
No. 15756-KA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
Rehearing Denied March 28, 1984.
Fred L. Jackson, Homer, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, John C. Blake, Dist. Atty., Walter E. May, *811 Jr., Asst. Dist. Atty., Jonesboro, for appellee.
Before PRICE, MARVIN and SEXTON, JJ.
SEXTON, Judge.
This defendant appeals his conviction for the offense of manslaughter in the death of Lynn Derrick Nash, age nineteen months.
Subsequent to being found guilty as charged of the offense of manslaughter, the defendant was sentenced to twelve years imprisonment at hard labor. An out-of-time appeal was granted herein by the Louisiana Supreme Court and the defendant now appeals asserting as error that there was insufficient evidence in this largely circumstantial case to sustain a conviction under the standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Dorothy Nash,[1] the mother of the victim, left home at about 6:45 p.m. on March 14, 1982 to attend her job at Spivey's Fried Chicken which was nearby. She had been home all day and testified that she left the child in good physical condition in the custody of the defendant, who was babysitting the victim and his six year old brother.
At about 2:45 a.m., Betty Nash, the defendant's sister, came to the mother's place of employment and told her that she needed to "come quick" as her baby was dead or dying. The mother, Dorothy Nash, and others at the establishment ran to Ms. Nash's home where Ms. Nash found the baby in the arms of the defendant. She grabbed the child, whom she described as limp, and hurried to the Jackson Parish Hospital. There the child was seen almost immediately by Dr. Haik, who was on duty for the weekend. Dr. Haik found the child cold and unresponsive and began revival procedures immediately. However, upon determining that the child's EKG registered no sign of life and that the child also had a depressed body temperature, the doctor ordered a cessation of medical efforts.
During the revival efforts, the mother called the defendant at the instruction of hospital personnel in an effort to determine a cause for the child's condition. The defendant told the child's mother that the child had consumed some Pert shampoo. Subsequently, when the mother returned home, the defendant reiterated the story about the Pert shampoo, and also advised the mother that upon his discovery that something was wrong with the child he had attempted to revive the child with CPR. He also stated that the child had fallen out of a chair and "might" have hit the stereo nearby.
The following day, Jackson Parish sheriff deputies, as well as the parish coroner, Richard Johnson, went to the mother's home to conduct an investigation. While there, the defendant again related that the baby had consumed some Pert shampoo and he also demonstrated the CPR technique which he had used on the child. He told the coroner that after seeing the child drink the shampoo, he had put him to bed. He later went to check on him and while he had his hand on the child's chest he noticed that the child's heart skipped a beat. He stated he then attempted CPR consisting of two sharp blows in the chest with a closed fist. The defendant stated that he then turned the child over and "a lot of mucus came out" of his nose on to the bed, and showed the investigators where this had occurred. However, the officers and the coroner were emphatic that they found no stains on the sheet. The coroner also testified that the defendant told him of the child's alleged fall from a chair which had occurred before the child had swallowed the Pert shampoo.
The coroner, who is not a physician, referred the victim's body to Dr. George McCormick, then coroner of Bossier Parish and noted forensic pathologist. Dr. McCormick testified that he found no external *812 evidence of traumatic injury in his autopsy. In conducting the autopsy, he found that the sixth and seventh ribs were broken on the left side at a line down from the center of the arm pit. He further found bruises on both sides of the diaphragm and hemorrhaging to the pancreas and duodenum. He found that the liver was torn and had hemorrhaged extensively into the abdominal cavity. He also found hemorrhaging beneath the spleen. In retracting the scalp, he found two large bruises on each side of the head and also found hemorrhaging on both sides of the brain, one on the lining and one on the brain itself.
The doctor testified that the brain injuries were at least one-half hour old at the time of death, were not over ten hours old and were probably under six hours old. He stated that the head had been struck at least two times while it was at rest.
Dr. McCormick further testified that it was only remotely possible for two sharp blows to the body to do all of the damage that occurred there. He went on to note that the bones of small children are very flexible and do not break easily. He was further absolutely positive that the ingestion of Pert shampoo not only would not bring about the child's death, but would cause only minor side effects such as intestinal gas and perhaps some nausea.
Dr. McCormick testified that he found no evidence of any green material being in the child's stomachgreen being the color of Pert shampoo. He did state that the child's blood alcohol content was approximately.043, meaning that this small victim had consumed an amount of alcohol approximately equivalent to that contained in half a can of beer. The doctor testified that Pert shampoo did contain probably more alcohol per unit of volume than a bottle of beer, but also noted that a medication which the child was taking also contained a significant level of alcohol.
The doctor concluded that the child's injuries to the head were inconsistent with an alleged fall from a chair, that the abdominal injuries were probably caused by more than two blows, and that no significant harm could have occurred from the drinking of Pert shampoo. He opined that he had been presented with a case of battered child syndrome, and that the child's death resulted from a combination of abdominal and head injuries.
It should be noted that the child had some orthopedic problem with his legs which required the use of braces. The mother testified that the child had great difficulty in getting about in the braces and found them uncomfortable, and would often cry when wearing them. She stated that in order to prevent the child's crying, she often removed the braces. The child was thus more mobile although he did have a tendency to fall when walking.
The next door neighbor, Ernestine Knox, testified she heard nothing unusual the night of the child's death. She said she was home but was only awake for a short period of time. However, she noted that a loud noise had awakened her, and when she made an inquiry, the defendant told her nothing was going on. The defendant's sister, Betty, stated she was at the house most of the time between about 8:00 p.m. and 3:00 a.m., except for about an hour. She apparently lived on the premises. She stated she never saw the defendant hit the child and did not see or hear the child fall. She also never saw the defendant perform CPR. She stated the defendant and the child were in the back room when the defendant called her and told her the baby had drunk some shampoo and showed her the child. The defendant told her to get the baby's mother and an ambulance. She stated she could tell that the child was in a bad condition. She also testified that when the mother returned, the defendant resisted the mother's efforts to take the child to the doctor, stating that the child was already dead.
In his testimony at the trial, the defendant's version of events was essentially identical to what he had previously told the officers with respect to a fall from a chair, the ingestion of the shampoo, the attempted CPR after the discovery of the skipped heart beat, and the mucus discharge from *813 the child's nose subsequent to the CPR. He also testified that the victim was never out of his presence that evening nor was the child released in any one else's custody. Furthermore, he stated that he saw no one else hit the victim.
Jackson v. Virginia, supra, holds that due process requires that the evidence, when viewed in the light most favorable to the prosecution must be sufficient for a rational trier of fact to conclude that the essential elements of the crime were established beyond a reasonable doubt. Since the evidence in this case is largely circumstantial, we are required to consider the standards of Jackson v. Virginia in the light of LSA-R.S. 15:438.[2]
After a period of vacillation,[3] the Louisiana Supreme Court has now firmly established the standard for review of cases involving substantial circumstantial evidence in light of LSA-R.S. 15:438 and Jackson v. Virginia, supra.
The Louisiana Supreme Court stated in State v. Chism, 436 So.2d 464 (La. 1983) that:
"Although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence." Chism, supra, at page 470.
The court further noted:
"Consequently, before a trier of fact can decide the ultimate question of whether a reasonable hypothesis of innocence exists in a criminal case based crucially on circumstantial evidence, a number of preliminary findings must be made. In addition to assessing the circumstantial evidence in light of the direct evidence, and vice versa, the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence." Chism at page 469.
We are satisfied from our review of the evidence that the evidence is sufficient to exclude every reasonable hypothesis of innocence when viewed in the light most favorable to the prosecution, even when carefully evaluated according to State v. Chism, supra. From that standpoint, the evidence clearly establishes that the child was in good health when the mother left even though he had suffered some minor falls earlier as a result of his problem with his legs. It was furthermore conceded by the defendant that he was the only party with sufficient access to the child to cause the injuries incurred. The medical evidence is overwhelming that the child was badly battered and precludes the reasonable possibility that the injuries resulted from efforts by the defendant at CPR. The defendant's statements concerning ingestion of Pert shampoo are refuted by the autopsy, as is the implication that the child struck his head on the stereo when falling. There was strong medical evidence that the head injuries occurred while the head was not moving. Moreover, the medical evidence also showed that the child should have suffered few, if any, ill effects from the Pert shampoo. Thus the defendant's statement asserting concern over the child *814 which he contended led to his CPR efforts is also discredited. Succinctly stated, the defendant had the only opportunity to harm the child, and his explanations of the manner in which the child was injured were shown to be false.
We therefore have no difficulty in determining that there is sufficient evidence in the record from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt under the due process standards of Jackson v. Virginia, supra, even when the largely circumstantial evidence in the case is viewed carefully according to the admonition of State v. Chism, supra.
For the foregoing reasons, the conviction appealed is affirmed.
AFFIRMED.
NOTES
[1] While the defendant, the mother of the victim, and Betty Nash, who notified the mother of the tragedy, all have the same last name, the record is not clear as to what the relationship between these parties is. However, Betty Nash was apparently staying at the premises in question.
[2] LSA-R.S. 15:438 reads as follows:

"§ 438. Circumstantial evidence
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
[3] See State v. Shapiro, 431 So.2d 372 (La.1982); State v. Williams, 423 So.2d 1048 (La.1982); State v. Graham, 422 So.2d 123 (La.1982).