618 So.2d 629 (1993)
STATE of Louisiana, Appellee,
v.
Anthony BROWN, Appellant.
No. 24840-KA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1993.
*631 E. Daniel Burt, Jr., Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Howard M. Fish, Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before MARVIN, SEXTON and BROWN, JJ.
SEXTON, Judge.
The defendant, Anthony Brown, was indicted for first degree murder concerning the November 1990 death of Shreveport attorney Carl Survine. A jury returned a responsive verdict of guilty of second degree murder, and defendant was thereafter sentenced to the mandatory term of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On appeal, defendant contends there was insufficient evidence to support the conviction and that hearsay evidence was erroneously admitted into evidence. Finding no merit to defendant's assignments of error, we affirm defendant's conviction and sentence.
The victim, Carl Survine, was an attorney who in the course of his employment with the Caddo Parish Indigent Defender's Office had represented the defendant. On November 20, 1990, defendant, his brother Lloyd, and Demetrius Cannon were playing dominoes and drinking beer. At about 7:00 p.m., they drove to Survine's Shreveport apartment where Survine gave $26.00 to defendant. Lloyd then went to the home of his sister, Donna Faye Brooks, and did not see defendant again until after 9:00 p.m. At that time, defendant picked Lloyd up, driving a van belonging to Survine. Survine was also in the van with his hands behind his back.
Defendant and Lloyd went to their mother's house where they obtained a flashlight and defendant's homemade knife. Defendant then drove to a location near a bridge and railroad tracks at Cross Lake. Defendant and Survine walked away, leaving Lloyd in the van. Lloyd noticed Survine's arms were not in the sleeves of his jacket. Defendant returned, alone, a few minutes later. Defendant informed Lloyd that he had left Survine "down there, tied up."
The Browns drove to Survine's apartment in his van. Defendant backed the van to the steps and removed a TV set, a VCR, various clothing items, credit cards, and a checkbook from the apartment. From Survine's apartment, the defendant called Shirley Davis, a relative in Dallas. He stated that he needed to "get out of town" and requested that he be allowed to stay with Ms. Davis in Dallas. Although Ms. Davis refused defendant's request, the Browns nevertheless drove the van to Dallas.
In Dallas, at approximately 4:00-4:30 a.m. the next morning, the brothers telephoned their uncle, Willie Dixon, requesting his help in selling the property they had taken from Survine's apartment. Several *632 of the items were sold in Dallas with the uncle's assistance, but defendant kept one coat and some sweaters which he later sold in Shreveport. The Browns abandoned the van in Dallas and returned to Shreveport with their uncle. One of Survine's credit cards was used to pay for gasoline for Mr. Dixon's vehicle.
Survine's body was found several days later, on November 24, floating in Cross Lake. He had several severe blows on his head, one of which broke his skull. One hand was tied behind his back and the other wrist bore ligature marks. There were indications that his ankles had been tied together. All of the ties were accomplished with cloth shoelaces.
On December 19, 1990, Shreveport Fire Department Water Rescue and Recovery Team divers found the homemade knife in the lake, near where the victim's body had been found. The coroner determined that this particular blade had caused the indentation on Survine's skull, rendered him unconscious, and that he had drowned. The head wound was a life-threatening wound, but death was actually caused by drowning.
On appeal, defendant first argues that the trial court erred in allowing defendant's sister, Donna Faye Brooks, to testify as to a statement allegedly made by their mother, Lottie Brown. Ms. Brooks testified that while she and her mother were speaking on the telephone on November 20, 1990, her mother informed Ms. Brooks that defendant had just arrived at Ms. Brown's house and had picked up a flashlight and "that old knife," an apparent reference to the homemade knife recovered near the victim's body. The defense later called Ms. Brown as a witness. She admitted that the telephone conversation occurred and that defendant had located the flashlight, but disputed Ms. Brooks' testimony that she stated defendant had picked up the knife.
At trial, defendant objected, contending that Ms. Brooks' statement constituted hearsay, that it violated defendant's rights under the confrontation clause, and that the statement should be excluded as unduly prejudicial. We interpret defendant's argument on appeal as a concession that the statement falls under the present sense impression exception to the hearsay rule. LSA-C.E. Art. 803(1). Indeed, the statement was made while Ms. Brown was perceiving defendant's actions or immediately thereafter allowing only for the time needed for translating her observations into speech. Compare Buckbee v. United Gas Pipe Line Company, Inc., 561 So.2d 76 (La.1990).
Defendant bases his appellate argument on his theory that, although the statement may have qualified as an exception to the hearsay rule, its admission nevertheless violated his constitutional rights under the confrontation clause. U.S. Const.Amend. VI; La. Const. Art. 1, § 16. In support of this argument, defendant cites Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), and Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In both cases, the Supreme Court noted that the confrontation clause will bar the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule. The confrontation clause will bar such statements unless the statement bears adequate indicia of reliability. The reliability requirement will be met where the statement either falls within a firmly rooted hearsay exception or is supported by particularized guarantees of trustworthiness.
In Ohio v. Roberts, it was held that the preliminary examination testimony of a now unavailable witness could be introduced into evidence at defendant's trial without violating the confrontation clause, as such hearsay testimony bore sufficient indicia of reliability. In Idaho v. Wright, the Court found the admission into evidence of a child victim's hearsay statements to a doctor pursuant to a state residual hearsay exception rule to be in violation of the confrontation clause. Noting that the residual hearsay exception was not a traditional, firmly rooted exception, the Court examined the totality of the circumstances surrounding the making of the statements for particularized guarantees of *633 trustworthiness, which the Court found lacking.
Defendant argues that the present sense impression exception is not a firmly rooted hearsay exception nor are there particularized guarantees of trustworthiness with the instant statement. Accordingly, defendant argues that there is not adequate indicia of reliability for purposes of the confrontation clause.
Defendant's argument that the present sense impression exception should not be deemed a firmly rooted hearsay exception stems primarily from G. Pugh, R. Force, G. Rault, K. Triche, Handbook on Louisiana Evidence Law, Authors' Note (3) to LSA-C.E. Art. 803(1), p. 422 (1993). There it is stated that the present sense impression to the hearsay rule "cannot automatically, for purposes of federal constitutional requirements, be regarded as a `firmly rooted' exception to the hearsay rule...." The noted authority on evidence, John Henry Wigmore, likewise expressed apparent displeasure with the present sense impression exception to the hearsay rule. 6 Wigmore, Evidence § 1775 (Chadbourn rev. 1976).
While acknowledging the scholarly authority cited by defendant, we are nevertheless unpersuaded by the argument that the present sense impression is not a firmly rooted exception to the hearsay rule. It has been noted that the present sense impression exception may possess even greater reliability than the related exception for excited utterances.[*] McCormick, Handbook of the Law of Evidence § 298 (1972); Comment, Excited Utterances and Present Sense Impressions as Exceptions to the Hearsay Rule in Louisiana, 29 La.L.Rev. 661 (1969). While requiring spontaneity as does the excited utterance, the present sense impression exception avoids the inherent defects in reliability caused by the emotional excitement necessary for excited utterances. We note that the United States Supreme Court had "no doubt" that the excited utterance (spontaneous declaration) exception, along with the exception for statements made for the purposes of medical diagnosis or treatment, constituted firmly rooted hearsay exceptions for purposes of confrontation clause analysis. White v. Illinois, ___ U.S. ___, ___n. 8, 112 S.Ct. 736, 742 n. 8, 116 L.Ed.2d 848 (1992). In determining the exceptions to be firmly rooted, the Court in White v. Illinois noted that each exception was codified under the federal rules of evidence and each was widely accepted among the states. Additionally, the excited utterance exception was noted to be at least two centuries old.
We find the present sense impression exception to have a similar pedigree.
The Louisiana Law Review comment, supra, by H. Alston Johnson, III, notes that the present sense impression exception has been used in a limited number of jurisdictions since 1942. McCormick, supra, cites a case using it in 1934 and notes that, in 1881, Professor Thayer, in a review of res gestae cases, concluded that such an exception existed and was based on the contemporaneousness of the statement. It was specifically found to be a valid hearsay exception under Louisiana law in a 1973 Louisiana Supreme Court opinion. State v. Smith, 285 So.2d 240 (La.1973). Although not specifically denominated as a present sense impression, its roots in the concept of res gestae can be traced back to a much earlier date. See State v. Pilcher, 158 La. 791, 104 So. 717 (1925). Additionally, the federal rules of evidence provide for a present sense impression exception. Fed. R.Evid. 803(1).
The trepidation expressed by the authors of the Handbook on Louisiana Evidence Law and adopted by defendant regarding the present sense impression exception would appear centered on the overbreadth accorded to its predecessor concept, res gestae. However, under a narrow, literal reading of LSA-C.E. Art. 803(1), only a statement describing or explaining an event or condition made while *634 perceiving the event or condition or immediately thereafter will be admissible.
The exception at issue literally and narrowly interpreted, provides for sufficient indicia of reliability. The instant circumstances comport tightly with LSA-C.E. Art. 801 D(4) as the authors of the Handbook on Louisiana Evidence Law, supra, suggest it should at Authors' Note (1) to LSA-C.E. Art. 803(1), p. 421. We conclude the present sense impression exception is a firmly rooted hearsay exception for purposes of the confrontation clause.
Moreover, defendant's confrontation clause challenge is without merit for a second reason. The declarant, Lottie Brown, was present and testified at trial. Accordingly, this case differs from Ohio v. Roberts, supra, and Idaho v. Wright, supra, where the hearsay declarant was unavailable for testimony at trial. Where, as here, the hearsay declarant is present at trial and subject to cross-examination, the traditional protections of the oath, cross-examination, and the opportunity for the jury to observe the witness's demeanor satisfy the constitutional requirements of the confrontation clause. United States v. Owens, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).
We see no distinction between the guarantees in the confrontation clause that a defendant have an opportunity to cross-examine the declarant and the instant situation where Ms. Brown was actually called on direct examination by defendant. Under either situation, a defendant would have an opportunity to explore the accuracy of the hearsay statement. Even though Ms. Brown's testimony was elicited by defendant on direct examination, it afforded substantial compliance with the purposes behind the confrontation requirement. Accord, Ohio v. Roberts, supra. Here, the jury heard both versions of the statement, had an opportunity to observe the demeanor of both Ms. Brown and Ms. Brooks, and Ms. Brooks was actively cross-examined by the defendant as to any motive she might have had for fabrication of the statement.
By his remaining assignments of error, defendant argues that there was insufficient evidence to support his conviction. In reviewing the sufficiency of the evidence to support a conviction, the appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Lott, 535 So.2d 963 (La. App. 2d Cir.1988).
Contrary to defendant's assertion in brief, the circumstantial evidence rule of LSA-R.S. 15:438 does not establish a stricter standard of review than the more general Jackson v. Virginia formula. Rather, it emphasizes the need for careful observation of the usual standard and provides a helpful methodology for implementation of the Jackson v. Virginia standard in cases which hinge on the evaluation of circumstantial evidence. State v. Chism, 436 So.2d 464 (La.1983); State v. Nash, 446 So.2d 810 (La.App. 2d Cir.1984).
The evidence viewed in a light most favorable to the prosecution shows that the defendant was with Mr. Survine, driving Survine's van at approximately 9:00 p.m. when they picked up defendant's brother, Lloyd. It appears that Survine's hands were likely tied behind his back with shoelaces. Lloyd noted that Survine's hands were behind his back and his arms were not in the sleeves of his jacket. A search of Survine's apartment following his death *635 revealed shoes and boots with the shoelaces removed. Later, the brothers and Survine drove to Cross Lake. Defendant and Survine left Lloyd in the van. The defendant returned alone, telling Lloyd that he had left Survine "down there, tied up." Survine's body was found near this location, floating in Cross Lake, with evidence that his hands and feet had been tied together. Several wounds on his head were caused by a homemade knife, later found in the lake near Survine's body and identified as belonging to the defendant. One of these wounds was life-threatening and, without expert surgical treatment, would have been fatal if Survine had not first died by drowning.
The most damaging of the aforementioned testimony, directly linking the defendant to Survine at the location of his death comes from Lloyd Brown. Defendant argues that Lloyd's testimony should be rejected because a reasonable hypothesis is that Lloyd himself killed Survine. It is the function of the jury and not that of the appellate court to assess the credibility of witnesses. State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Williams, 567 So.2d 735 (La. App.2d Cir.1990). Where the trier of fact has made a rational credibility determination, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La. 1988); State v. Williams, supra.
Defendant's actions following the murder also belie his innocence. Defendant and his brother drove Survine's van to Survine's apartment, where they then removed various of Survine's possessions. Also, it appears that at this time defendant called a relative in Dallas stating his need to get out of Shreveport. The Browns then drove to Dallas. These actions, culminating in defendant's flight from the city of the crime indicates defendant's consciousness of guilt and is a circumstance from which a jury may infer guilt. State v. Fuller, 418 So.2d 591 (La.1982); State v. Bellamy, 599 So.2d 326 (La.App.2d Cir. 1992), writ denied, 605 So.2d 1089 (La. 1992). The defendant, together with Lloyd, sold or gave away many of the items they had taken from Survine's apartment.
The trial court instructed the jury that they could find defendant guilty of second degree murder if they found he had specific intent to kill or to inflict great bodily harm, or alternatively if they found Survine was killed while the defendant was engaged in the perpetration of an armed robbery even if he had no intent to kill or to inflict great bodily harm. A jury is not required constitutionally to agree on a single theory to convict a defendant where it is instructed as to alternate theories. Schad v. Arizona, ___ U.S. ___, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); State v. Vergo, 594 So.2d 1360 (La.App.2d Cir.1992), writ denied, 598 So.2d 373 (La.1992).
We find sufficient evidence to support either of the two possible theories that defendant committed the second degree murder of Survine. There was sufficient evidence that defendant had specific intent to kill or inflict great bodily harm on Survine or that, even in the absence of such specific intent, that Survine was killed during the commission of an armed robbery.
Second degree murder is, in pertinent part, the killing of a human being (1) when the offender has a specific intent to kill or to inflict great bodily harm; or (2) when the offender is engaged in the perpetration or attempted perpetration of armed robbery, even though he has no intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1.
To support a conviction of second degree murder under the first subsection of LSA-R.S. 14:30.1, the state must show that the defendant had the specific intent to kill or inflict great bodily harm. State v. Ruffins, 597 So.2d 171 (La.App.2d Cir.1992).
Specific intent, a state of mind, need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Dean, 528 So.2d 679 (La.App.2d Cir.1988). The determination of whether the requisite intent is present is a question for the trier of fact. State v. *636 Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975). Here, defendant's specific intent to kill or inflict great bodily harm is clearly evidenced by the blows to Survine's head, using the defendant's homemade knife, one of which fractured Survine's skull. Clearly, the use of such a weapon in such a manner is evidence of defendant's specific intent to do great bodily harm.
Alternatively, we find sufficient evidence that Survine was killed during the commission of an armed robbery. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64. The term "dangerous weapon" includes any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. LSA-R.S. 14:2(3). Survine's van, something of value, was taken from his immediate control. The defendant's use of force may be inferred from the ligatures binding Survine's hands and feet and from the wounds inflicted. Clearly, the homemade knife constituted a dangerous weapon. All of the elements of armed robbery were present.
Defendant's assertion that under a "reasonable hypothesis of innocence," Survine may have regained consciousness, untied himself, slipped on the embankment, and "accidentally drowned," even if accepted as true, does not absolve defendant of criminal culpability. In a factually similar case, State v. Matthews, 450 So.2d 644 (La.1984), the defendant beat his victim into unconsciousness and left her on ground which sloped down into a canal. The victim's body was found the next night in the water. The cause of death was drowning. In affirming defendant's murder conviction, the Louisiana Supreme Court found that defendant's actions in beating the victim into unconsciousness and leaving her on ground sloping into a canal were clearly a contributing cause of her death "even if the victim rolled, crawled or stumbled into the water." State v. Matthews, supra at 647.
Similarly, the defendant's actions in the instant case were clearly a contributing cause of Carl Survine's death, even if Mr. Survine "accidentally" fell into the water and drowned. We find sufficient evidence to support the jury verdict that defendant was guilty of second degree murder.
As we find none of the defendant's assignments of error to have merit, we affirm defendant's conviction and sentence.
AFFIRMED.
BROWN, J., concurs with written reason.
BROWN, Judge, concurring.
The evidence of defendant's guilt was convincing and the statement made by his mother to his sister was of little importance. The admission of this hearsay was clearly harmless and resulted in no prejudice.
NOTES
[*] Both the present sense impression and excited utterance exceptions to the hearsay rule arose from the often criticized concept of res gestae.