# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-511

**STATE OF LOUISIANA**

**VERSUS**

**RODNEY BERNARD NEWTON, SR.**

\*\*\*\*\*\*\*\*\*\*

## APPEAL FROM THE
## FOURTEENTH JUDICIAL DISTRICT COURT
## PARISH OF CALCASIEU, DOCKET NO. 16048-10
## HONORABLE CLAYTON DAVIS, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell and J. David Painter, Judges.

**AFFIRMED.**

John F. DeRosier, District Attorney
Carla S. Sigler, Assistant District Attorney
Karen C. McLellan, Assistant District Attorney
901 Lakeshore Street, Suite 600
Lake Charles, LA 70601
(337) 437-3400
**ATTORNEY FOR APPELLEE**
    State of Louisiana

Todd S. Clemons
Todd Clemons & Associates, APLC
1740 Ryan Street
Lake Charles, LA 70601
(337) 477-0000
**ATTORNEY FOR DEFENDANT/APPELLANT**
    Rodney Bernard Newton, Sr.

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Defendant, Rodney Bernard Newton, Sr., is the father of Sean and Brandon Newton. Sean and Brandon, their cousin, Joshua Lambert, and three friends, became involved in a gang dispute at Prien Lake Mall. The two gangs decided to continue their confrontation in a neighborhood behind the mall. The six young men were all in Defendant's car, and Sean Newton was driving. The boys drove through the neighborhood looking for the other gang. When they saw the men, Sean fired a gun into the crowd, and a fourteen-year-old girl who happened to be walking through the neighborhood was shot in the head. She died as a result of the gunshot wound. Defendant and his wife, Nina Newton, attempted to cover up their two sons' drive-by shooting by concocting a story and lying to the police about their sons' whereabouts at the time of the shooting.

Defendant was charged with accessory after the fact, a violation of La.R.S. 14:25. All the Newtons (Rodney, Nina, Sean, and Brandon) were tried together as co-defendants. A jury trial commenced on May 16, 2011, and on May 24, 2011, Defendant was found guilty as charged. Defendant filed a "Motion for Judgment of Acquittal with Incorporated Memorandum." The motion was heard and denied. After waiving all delays, Defendant was sentenced to three years incarceration in the parish jail and credit for time served.

Defendant has perfected a timely appeal, and he alleges the evidence was insufficient to sustain the verdict of accessory after the fact. For the following reasons, we affirm the conviction.

## ANALYSIS

Defendant asserts his wife, Nina Newton, was the one who told the police officers their sons were not at the scene of the shooting. He contends he was merely present when she discussed lying to the police but had encouraged the boys

2

to tell the truth. Defendant argues there was nothing put into evidence that would have supported a conviction for accessory after the fact.

The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the prosecution proved the all of the requisite elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781 (1979). The *Jackson* standard of review is an objective standard for testing all of the evidence, both direct and circumstantial, for reasonable doubt. *State v. Marcantel*, 00-1629 (La. 4/3/02), 815 So.2d 50. The trier of fact is presumed to have acted rationally until it appears otherwise. *State v. Mussall*, 523 So.2d 1305 (La.1988).

An accessory after the fact is defined as "any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment." La.R.S. 14:25. The statute requires only the general intent of the offender that the person who committed the felony will escape arrest, trial, conviction or punishment. The intent may be shown by circumstantial evidence or inferred. Finally, there must be a completed felony. The defendant who was accused of being an accessory after the fact must have known or had reasonable grounds to know of the commission of the felony and gave aid personally under circumstances that indicated either that he actively desired that the felon avoid arrest, conviction, or punishment, or that he believed that one of these consequences was substantially certain to result from his assistance. *State v. Chism,* 436 So.2d 464 (La.1983).

Joshua Lambert, Defendant's nephew, was in the car with Sean Newton when Newton fired the gun out the window into the crowd and testified accordingly. Lambert stated at trial, after they drove away from the scene, Andre

3

Broussard, who was also in the car, received a text that a little girl at the scene had been shot. Newton then called his mother and told her they had been in an altercation. She told them to hurry home, but they drove first to Lambert's house where they hid the gun, and Newton burned his tee shirt.

Lambert and the two Newton boys then went to the Newton's apartment, where Rodney and Nina Newton were waiting for them. After the Newtons heard what had happened, Nina Newton said she was going to call the police and tell them the boys were accosted by a gang at the mall and as they were leaving the mall, they heard gun shots so they hurried home. Lambert testified Defendant was present during this discussion. He stated that his uncle said "the story didn't make any sense or anything, so we should have just told the truth." However, "My Aunt Nina was, like, 'No, because our baby is going to get in trouble and everything about the situation.' So after she said that, he just went with it."

Lambert further testified, after his aunt called the police the evening of the shooting, an officer came to the apartment and talked to them. After a while, the officer asked them to go to the police station. His uncle drove them all to the police station. Lambert stated after the police talked to his aunt and uncle, they all went back to the apartment. He testified Nina Newton told the police she was sending the boys to her brother in Lafayette the next day to get them out of harm's way in light of the incident.

The next day, the three boys drove in Sean Newton's car to Iowa, Louisiana where they met up with their uncle who then took them to his place in Lafayette. Defendant and his wife followed the boys in their car to Iowa.

Defendant argues while he was present during the discussion of what to tell the police, he merely listened. In fact, Defendant contends he told the boys to tell the truth. He maintains the State failed to prove he had the requisite intent to aid or harbor the boys' crimes from detection. He argues all the State proved at trial was

4

he said nothing and that, in itself, is not a crime; accordingly, there was insufficient evidence he acted as an accessory after the fact.

In *Chism,* 436 So.2d 464, the defendant's conviction for accessory after the fact was affirmed by the supreme court, and it was Chism's failure to say or do anything that was discussed by the court. Chism, who was dressed as a woman, a male friend, and Chism's uncle were driving around in a car, drinking beer. The friend wanted to have sex with Chism, and the uncle wanted to find his ex-wife for the same purpose. After they located the ex-wife, Chism and his friend sat in the car while the uncle tried to convince the ex-wife to join them. When she refused, he stabbed her several times. He then dragged her to the car, tossed her into the front seat with Chism, and directed the two friends to drive out to the countryside. There, he directed Chism and his friend to take the woman out of the car, and they laid her in the grass. The two men then left the uncle with the ex-wife and drove away. The next morning, Chism reported the incident to the police. The woman was found dead. Chism was eventually convicted as an accessory after the fact to second degree murder.

After noting there was overwhelming evidence that Chism's uncle had committed a felony and Chism was aware of the offense, the supreme court discussed how Chism's intent to assist his uncle escape arrest, trial, conviction, or punishment or belief that one of these consequences was substantially certain to result from his assistance, was established circumstantially:

> Intent, like any other fact may be proved by circumstantial evidence. La.R.S. 15:445. This is evidence of one fact, or a set of facts, from which the existence of the fact to be determined may reasonably be inferred. McCormick, Law of Evidence, p. 435 (2d ed. 1972); Prosser, Law of Torts, p. 212 (4th ed. 1971). In criminal cases, the rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438.
>
> Circumstantial evidence involves, in addition to the assertion of witnesses as to what they have observed, a process of reasoning, or

5

inference by which a conclusion is drawn. Like all other evidence, it may be strong or weak; it may be so unconvincing as to be quite worthless, or it may be irresistible and overwhelming. There is still no man who would not accept dog tracks in the mud against the sworn testimony of a hundred eye-witnesses that no dog passed by. The gist of circumstantial evidence, and the key to it, is the inference, or process of reasoning by which the conclusion is reached. This must be based on the evidence given, together with a sufficient background of human experience to justify the conclusion. Prosser, *supra*, at 212.

Consequently, before a trier of fact can decide the ultimate question of whether a reasonable hypothesis of innocence exists in a criminal case based crucially on circumstantial evidence, a number of preliminary findings must be made. In addition to assessing the circumstantial evidence in light of the direct evidence, and vice versa, the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.

In this case we conclude that the evidence is sufficient to support an ultimate finding that the reasonable findings and inferences permitted by the evidence exclude every reasonable hypothesis of innocence. Despite evidence supporting some contrary inferences, a trier of fact reasonably could have found that Chism acted with at least a general intent to help Lloyd avoid arrest because: (1) Chism did not protest or attempt to leave the car when his uncle, Lloyd, shoved the mortally wounded victim inside; (2) he did not attempt to persuade Duke, his would-be lover, [to] exit out the driver's side of the car and flee from his uncle, whom he knew to be one-legged and armed only with a knife; (3) he did not take any of these actions at any point during the considerable ride to Willow Point; (4) at their destination, he docilely complied with Lloyd's directions to remove the victim from the car and leave Lloyd with her, despite the fact that Lloyd made no threats and that his wooden leg had become detached; (5) after leaving Lloyd with the dying victim, he made no immediate effort to report the victim's whereabouts or to obtain emergency medical treatment for her; (6) before going home or reporting the victim's dire condition he went to a friend's house, changed clothing and discarded his own in a trash bin from which the police were unable to recover them as evidence; (7) he went home without reporting the victim's condition or location; (8) and he went to the police station to report the crime only after arriving home and discussing the matter with his mother.

*Id.* at 468-69 (footnote omitted).

6

As in *Chism*, in the current case, the evidence establishing Sean Newton's felony was overwhelming. Three of the five men in the vehicle with Newton testified that he fired a single shot out of the car window into the crowd of men. Defendant was fully aware of the felony after being apprised of it by his son. Defendant's behavior exhibited, as in *Chism*, at least the general intent to aid his son in avoiding the consequence of his actions. Defendant sat at his wife's side as she lied to the officer at their apartment. He drove everyone to the police department and, apparently, again sat at her side while she and the boys lied to a different police officer. He signed a consent form for the officers to search his vehicle for any evidence of the shooting and still did not say anything. In *Chism*, the supreme court noted in a footnote an illustrative list of the type of "aid" contemplated by La.R.S. 14:25 and included in the list was the volunteering of false information to law enforcement officers. *Id.* at 467, n.1. Defendant's silence, combined with the opportunities he had to demonstrate an intent not to acquiesce in his wife's and his sons' cover-up, together with his overt act in following the boys to Iowa for the sole purpose of secreting his sons away speaks for him now.

Therefore, we find no merit to this assignment of error.

## DECREE

For the foregoing reasons, Defendant's conviction for accessory after the fact is affirmed.

**AFFIRMED.**

7