OPINION
Defendant-Appellant, Eric L. McNeal, appeals from a judgment of conviction and sentence entered by the Allen County Common Pleas Court upon a jury verdict finding him guilty of one count of felonious assault, a second degree felony in violation of R.C. 2903.11(A)(1). On appeal, McNeal asserts that trial court erred in admitting a tape of a 9-1-1 call from an unidentified caller under the present sense impression hearsay exception, claiming that the statements contained therein exceed the scope of the rule, that discrepancies undermined the trustworthiness of the statements, and that the unavailability of the caller violated his federal and state confrontation clause rights. Reviewing the entirety of the record, we find that the statements fall within the exception and that other competent, overwhelming evidence of the defendant's guilt rendered any potential error in the admission of the tape harmless beyond a reasonable doubt. McNeal also argues that his sentence is unsupported by the record and contrary to law. We find the trial court's sentencing determination to be an appropriate exercise of discretion and, therefore, affirm the trial court's judgment.
Procedural history and facts relevant to issues raised on appeal are as follows. In the early morning hours of June 14, 2001, the State Highway Patrol received a 9-1-1 call from a female motorist who reported that she was unable to proceed down Collett Street, located in Lima, Ohio, because of an altercation in the road. The call was transferred to the Lima Police Department and the caller relayed the events she had just witnessed, including descriptions of the parties involved and their respective conduct. At 2:38 a.m., Patrolman Steven Stechschulte of the Lima Police Department was dispatched to the six hundred block of North Collett Street in response to a report of an ongoing assault. Upon his arrival, the officer found Matthew Propst lying unconscious on the ground, his face covered with blood, bleeding severely from the nose and ears, and having trouble breathing. Standing next to the victim were two other males, subsequently identified as Brian Armstead and Richard Dickman, who indicated that McNeal had assaulted Propst and recently fled the area.
Armstead testified at trial that in the early evening hours of June 13, 2001, he was sitting on the porch of his North Collett Street residence drinking with his friends, Eric McNeal and Cletus Cannon. Propst, who had also been drinking, arrived sometime after 10:00 p.m. Shortly thereafter, McNeal, who is African American, became upset with Propst, who is Caucasian, for using the term "nigger" or "nigga." While Propst claimed only to use the phrase as a term of endearment, which was corroborated by Armstead's testimony, Cannon testified that Propst used the term in a derogatory manner. McNeal instructed Propst not to use the term in reference to him, and they continued to argue about the use of the term at various times throughout the evening.
Around 12:30 a.m., Armstead, McNeal, Propst, and Cannon proceeded to Lombardo's bar, where Cannon departed and Richard Dickman, another friend of Armstead, joined the group. When Lombardo's closed at 2:30 a.m., the group left the bar and returned to Armstead's house. Armstead drove with McNeal in the passenger seat and Propst and Dickman in the back seat. During the ride, McNeal and Propst began arguing again. Armstead turned the music up, and neither he nor Dickman could hear much of what was said, although Dickman testified that there was not really much of an argument at that point.
When the men pulled up to the house, Armstead went inside. In the meantime, McNeal exited the car and became very violent and angry with Propst, who, according to Dickman, denied using the term and did not realize why he was so angry. A confrontation ensued in which the two men grappled with each other, throwing intermittent punches. At that point, Armstead exited the house, realized a confrontation was occurring, and attempted to step between the men. Nevertheless, McNeal managed to punch Propst in the face, causing him to fall into Collett Street and hit his head on the pavement. McNeal walked over to Propst, stood over him as he lay motionless, and then began kicking him in the head. Propst let out a single scream, but McNeal continued to kick his head and stomp his face as he lay there with his eyes rolled back, shaking as though in a seizure, and making a "snoring" sound. The assault proceeded despite the presence of a motorist unable to proceed due to their position in the road and Dickman and Armstead's attempted intervention: when Dickman and Armstead approached, McNeal pushed Armstead away and threatened to "fuck" the men up. The assault ceased only when Armstead returned to the house to call the police after Dickman very loudly instructed him to do so. At that point, McNeal pulled Propst off the road, dragging him by his hair and shoulder, and fled the area. Dickman testified that there was so much blood on the ground that the fire department was dispatched to clean it up.
At trial, Dr. Herman Jiminez-Medina testified that Propst was admitted in critical condition, that the injuries sustained created a substantial risk of death, and that he would not have survived if he had not been vigorously attended to. The physician further testified that the beating produced a blot clot on the brain, a brain contusion/bruise, multiple nasal bone fractures, a ruptured eardrum, memory loss, and visual, speech, and cognitive impairment. Propst is expected to have a perpetual need for continued medical care resulting from his injuries.
On July 12, 2001, the Allen County Grand Jury indicted McNeal on one count of felonious assault, a second degree felony in violation of R.C.2903.11(A)(1), and one count of attempted murder, a first degree felony in violation of R.C. 2923.02(A) and R.C. 2903.02(A). The State moved for a preliminary determination as to the admissibility of the 9-1-1 tape. McNeal asserted that the tape was inadmissible hearsay and that he was prejudiced by the inability to cross-examine the unidentified caller. After reviewing the tape and the parties' respective arguments, the trial court found that the tape would be admissible under the present sense impression hearsay exception.
The matter proceeded to trial, after which the jury returned a verdict of guilt for felonious assault, but acquitted McNeal on the attempted murder charge. The court continued the proceedings for sentencing and ordered that a presentence investigation report be prepared. McNeal was subsequently sentenced to eight years imprisonment, the maximum term available. The instant appeal followed, with two assignments of error presented for our consideration:
Assignment of Error Number One
 "It was an abuse of discretion for the trial court to admit the 911 tape pursuant to Evid.R. 803(1)."
Evidence adduced at trial established that on June 14, 2001, the Lima post of the Ohio State Highway Patrol received a 9-1-1 call from a woman who stated she was driving on Delphos Avenue and had attempted to turn right onto Collett Street but was unable to proceed because a fight was occurring in the street. The State Patrol dispatcher then transferred the call to the Lima Police Department. The unidentified caller repeated her location and proceeded to give a description of what was occurring. The entire 9-1-1 call was tape-recorded. At trial, the State sought to admit the out-of-court statements contained on the tape to prove the truth of the matters contained therein. McNeal objected to the admission of the tape, asserting that statements regarding the participants' race and appearance did not describe or explain what happened and that inconsistencies within the caller's recitation of events so undermined its trustworthiness as to preclude its admission. We do not agree.
It is generally true that an out-of-court statement may not be offered into evidence to prove the truth of the matter asserted.[1] However, there are several exceptions to this expansive rule. Trial courts enjoy broad discretion in determining whether a declaration should be admissible under a hearsay exception,[2] and the trial court's ruling on evidentiary issues will not be reversed on appeal absent a showing that the accused has suffered material prejudice.[3] Accordingly, we will not reverse the trial court's decision absent an abuse of discretion, which implies the trial court's attitude was unreasonable, arbitrary, or unconscionable.[4] "A decision is unreasonable if there is no sound reasoning process that would support that decision."[5]
In this instance, the trial court determined that the contents of the 9-1-1 tape were admissible pursuant to the present sense impression hearsay exception contained in Evid.R. 803(1), which states, in pertinent part:
 "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 "(1) Present Sense Impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness."
Accordingly, the trial court has discretion to exclude statements if the circumstances under which the statements were made indicate a lack of trustworthiness.[6]
Both the present sense impression exception and the similar excited utterance exception originated as part of the older res gestae
(spontaneous exclamations) hearsay exception.[7] Unlike an excited utterance, a present sense impression need not be made while the declarant is under the influence of emotion or trauma. "The principle underlying this hearsay exception is the assumption that statements or perceptions, describing the event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness."[8] Moreover, the spontaneity of the statement, either contemporaneous with the event or immediately thereafter, is the key to the statement's trustworthiness.[9]
"By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived — a fact which obviously detracts from the statement's trustworthiness."[10]
Recorded 9-1-1 calls may be admitted under the present-sense impression or excited utterance exceptions under appropriate circumstances.[11]
The 9-1-1 tape at issue contains the following colloquy between the caller and dispatchers from the State Highway Patrol Office and Lima Police Department:
"Dispatcher: 911
 "Caller: Hi . . . I'm . . . I just tried to go down Collett and I'm . . . just from Delphos Avenue at the corner here and there's three kids outside and one laying on the ground and this guy keeps kicking him in the head.
 "Dispatcher: Okay, let me give you Lima Police Department . . . one second.
 "Caller: Okay.
 "[Phone rings twice]
 "Caller: Hi . . . I'm going down Delphos Avenue and I turned right onto Collett and I couldn't get through because there's three kids beating up this one kid and his head is busted wide open and he's just laying on the ground and they just keep kicking him.
 "Dispatcher: At Delphos and Collett?
 "Caller: At Delphos and Collett . . . they're younger . . . they're (inaudible).
 "Dispatcher: Okay, are they white or black?
 "Caller: They're . . . um . . . the guy standing up was white, the guy laying on the ground was white and there's two black guys.
 "Dispatcher: But the guy they were assaulting was white?
 "Caller: And the darkest black guy is the one that was kicking him like crazy. Everybody else is just standing around.
 "Dispatcher: (to radio) Okay, I have an . . . (inaudible).
 "Dispatcher: (to caller) Can you tell me what any of them was wearing?
 "Caller: Um . . . the one kid was holding a beer and is wearing a gray shirt and blue shorts.
 "Dispatcher: Was he white or black?
 "Caller: Um . . . he was the white guy . . . he was just standing there watching.
 "Dispatcher: Okay.
 "Caller: The guy that was trying to keep the other guy off of the one on the ground had on a yellow Adidas shirt and I think some khakis.
 "Dispatcher: All right . . . we'll get `em on the way.
 "Caller: Okay.
 "Dispatcher: All right.
 "Caller: Thanks. Bye.
McNeal admits that that the statements were made as the caller was perceiving the event or immediately thereafter, but avers that the caller's recitation of events to the State Patrol and Lima Police dispatchers "assert very different truths." He claims that her statement to the State Patrol dispatch that "there's three kids outside and one laying on the ground and this guy keeps kicking the one in the head" relays that there are three people present but only one was inflicting blows, and that, in contrast, her statement to the Lima Dispatch that "there's three kids beating up this one kid" indicates that all three individuals are actively involved in the fight. McNeal maintains that this discrepancy creates uncertainty as to which description of events was accurate and undermined the trustworthiness of the statement, concluding that the trial court abused its discretion in admitting the tape.
In effect, McNeal attempts to subvert the caller's veracity by isolating a generalized synopsis of what the caller was witnessing in the introductory statement to the Lima dispatcher. We are not, however, willing to consider the statements in a vacuum. A review of the remainder of the dialogue reveals that the caller clarifies the general statement that there were three individuals assaulting the victim, specifically indicating that only one individual was conducting the assault while the others looked on or attempted to stop the altercation. Considering the totality of the circumstances, we do not find that any discrepancy in the statements so undermined the trustworthiness of the caller's recitation of events as to preclude admission of the tape as a present sense impression. Moreover, contrary to McNeal's assertions, the present sense impression exception is certainly not limited to abstract, generic, or generalized statements of events;[12] in this instance, the caller's identification and description of the individuals' race, appearance, and respective conduct are statements which describe and explain what the caller had perceived. Therefore, we do not find that the trial court abused its discretion in admitting the statements under the present sense impression exception of Evid.R. 803(1).
McNeal additionally argues that the State's failure to identify the caller prevented him from cross-examining the caller's veracity, thereby violating his right to confrontation as provided by the Sixth Amendment and Section 10, Article I of the Ohio Constitution.[13] Where a declarant remains unavailable at trial and the State seeks to offer his out-of-court statements against the accused, we must decide whether the Confrontation Clauses permit the State to deny the accused of his right to force the declarant to submit to cross-examination.[14]
"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."[15] Although this rationale is similar to that forming the foundation for the evidentiary rules prohibiting introduction of hearsay, the two are not coextensive.[16] Consequently, the Confrontation Clause may bar the admission of evidence otherwise admissible under a hearsay exception.[17]
The Ohio Supreme Court has recently summarized the circumstances under which an accused may be denied his usual right to force a declarant to submit to cross examination:
 "The state may deny the accused the right to cross-examination without violating the Confrontation Clause if the court deems the proffered out-of-court statements to be `so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability.' White v. Illinois (1992), 502 U.S. 346, 357, 112 S.Ct. 736, 116 L.Ed.2d 848. That is, the right to confrontation is not absolute and `does not necessarily prohibit the admission of hearsay statements against a criminal defendant.' Idaho v. Wright (1990), 497 U.S. 805, 813, 110 S.Ct. 3139, 111 L.Ed.2d 638. Hearsay statements are deemed sufficiently reliable to allow their admission without the benefit of cross-examination when the statements (1) `fall within a firmly rooted hearsay exception,' or (2) contain ` "adequate indicia of reliability."' Ohio v. Roberts (1980), 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597. Therefore, to be admissible, * * * [the declarant's] statements must meet one of the prongs of Roberts."[18]
Although there may be debate over whether the present sense impression exception is firmly rooted,[19] in State v. Dever the Ohio Supreme Court held that "unavailability of the declarant need not be demonstrated when a hearsay statement is admitted pursuant to an Evid.R. 803 exception."[20] Moreover, several state and federal courts[21]
and at least one Ohio appellate court have specifically found that the present sense impression exception is a firmly rooted hearsay exception for purposes of the confrontation clause.[22]
However, the issue of hearsay statements and their relationship to the confrontation clause was revisited by the Ohio Supreme Court in State v.Storch.[23] Storch, which was decided in light of Ohio's recently enacted Evid.R. 807, construed its holding in Dever and the United States Supreme Court's holding in White to be applicable only to a defendant's federal constitutional right to confrontation. Comparing the state and federal provisions, the Court indicated that the current interpretation of the Sixth Amendment right to confrontation provides less protection for an accused than the protection provided by the Sixth Amendment as traditionally construed and by the express words of Section 10, Article I
of the Ohio Constitution and found that, although admission may not violate the Sixth Amendment, it may nonetheless violate our state constitutional right of confrontation.[24] Storch construed the state right to confrontation to require live testimony where reasonably possible, indicating that it is the State's duty to establish the unavailability of a child declarant before the child's extrajudicial statements can be admitted into evidence and that an attempt must be made to bring the declarant to court or the court to the declarant to gain an unbiased view of the declarant's ability to testify.[25] While Storch
involved the admission of statements of a young child who was a victim of sex abuse under Evid.R. 807,[26] a rule not at issue herein, we find the discussion of constitutional rights controlling in this case, as theStorch court specifically extended its holding to paragraph three of the syllabus in Dever and cautioned that "the `lesser' courts of Ohio ignore our words at their peril as to questions of state law."[27]
In the instant case, the State moved the trial court for a pre-trial determination as to the admissibility of the 9-1-1 tape. At a September 4, 2001 pre-trial hearing, the court and counsel listened to the proposed audiotape and arguments were submitted as to the admissibility of statements contained therein. The court subsequently found the caller to be unknown and, therefore, unavailable, ruling that the tape would be admissible under the present sense impression exception. Testimony at trial indicated that the State Patrol and Lima dispatchers' equipment would not read or display cellular phone numbers and that, despite the agencies' customary practice to do so, the dispatchers had failed to inquire as to the caller's identity. In an attempt to locate the witness, the Lima Police Department cycled a Crime Stoppers television advertisement with a synopsis of events and request that individuals with relevant information contact the agency. Detective James Baker testified that, while intended as an attempt to locate the caller, the broadcast did not specifically solicit her because the department did not want to limit themselves or deter other potential witnesses from responding.
Although McNeal did not challenge or assert that efforts to locate the witness were insufficient or inadequate and the court did not specifically address the State's failure to inquire as to the caller's identity or its subsequent efforts to locate the caller in ruling that the caller was unavailable, the State appears to have made a reasonable attempt to contact her with what information was available. Moreover, assuming that the evidence had been improperly admitted in derogation his constitutional rights and that the damaging potential of the cross-examination were fully realized, we find that the adversarial setting would have had little effect upon the statements' reliability and that admission of the tape was harmless.[28] The strength of the State's case was found in the testimony of Brian Armstead, a friend of McNeal since childhood, and Richard Dickman, who did not know either McNeal or Propst prior to meeting the men at Lombardo's. The testimony of these witnesses was credible and compelling; they witnessed the entirety of the evening's events and were subject to unrestrained cross-examination. There were no allegations or indications that they had contributed to, encouraged, or intended to aid the execution of the crime; conversely, both witnesses took an active roll in attempting to prevent and stop the ongoing assault. Therefore, because the statements contained in the 9-1-1 tape were cumulative of and corroborated by the testimony of other witnesses on all material points[29] and the remaining evidence comprises overwhelming proof of the defendant's guilt,[30] we find that any error in the admission of the tape was harmless beyond a reasonable doubt. Accordingly, McNeal's first assignment of error is overruled.
 Assignment of Error Number Two "The maximum sentence imposed by the trial court is contrary to law."
Within this assigned error, McNeal contends that the trial court misapplied statutory sentencing guidelines and that its findings are not supported by the record, concluding that the circumstances of this case do not warrant imposition of the maximum sentence.
The structure of Ohio felony sentencing law provides that the trial court's statutory findings determine the sentence imposed.[31] A trial court must be in strict compliance with the relevant sentencing statutes by making all necessary findings on the record at the hearing on sentencing.[32] A sentencing court need not, however, recite the exact words of the statute in a talismanic ritual so long as the record clearly indicates that the court considered applicable sentencing guidelines and set forth appropriate findings and reasons in support of its determination.[33]
R.C. 2953.08(G)(2) authorizes appellate courts to increase, reduce, or otherwise modify or vacate a sentence and remand the matter to the trial court for re-sentencing if the court finds by clear and convincing evidence:
 "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13; division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 "(b) That the sentence is otherwise contrary to law."
An appellate court should not, however, simply substitute its judgment for that of the trial court, as the trial court is "clearly in the better position to judge the defendant's dangerousness and to ascertain the effect of the crimes on the victims."[34]
A felony of the second degree warrants a definite prison term of two, three, four, five, six, seven, or eight years,[35] and it is presumed that a prison term is necessary to comply with the purposes and principles of sentencing under R.C. 2929.11.[36] Where, as here, an offender has previously served a prison term, the trial court is not required to make the findings mandated by R.C. 2929.14(B) before imposing more than the minimum term provided for the offense. However, the court may only impose the maximum term upon concluding, among other things, that the offender committed one of the worst forms of the crime or that the offender poses the greatest likelihood of committing future crimes.[37] Additionally, the court must "make a finding that gives its reasons for imposing the maximum prison term.[38]
R.C. 2929.12(A) enumerates and requires the sentencing court to consider a nonexclusive list of seriousness and recidivism factors outlined in R.C. 2929.12(B), (C), (D), and (E) in determining the most effective way to comply with the purposes and principles of sentencing outlined in R.C. 2929.11. Courts are also permitted to contemplate any other circumstances or factors that are relevant to achieving the purposes and principles of sentencing[39] and are provided significant discretion in determining the weight to be assigned to these and other statutory factors.[40] The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors.[41] For this reason, the sentencing court can satisfy its duty under R.C. 2929.12 with nothing more than a rote recitation of the factors it considered to be applicable.[42] However, where a defendant has clearly and convincingly demonstrated that a finding is erroneous or unsupported by the record, we will decline to speculate as to what specific effect, if any, the application of the correct factors would have on the trial court's sentencing determination and will remand the case for resentencing.[43]
McNeal argues that his successful completion of previously imposed sanctions evidences that he has responded favorably to those sanctions, asserting that finding that he posed the greatest likelihood of recidivism was erroneous and that the imposition of the maximum sentence was, therefore, contrary to law.
As we recently indicated in State v. Wobbler,[44] "we are not persuaded by the argument that consideration of whether one responds favorably to previous sanctions is strictly limited to whether the defendant completed those sanctions without incident: a highly indicative factor of whether an offender has responded favorably to previous sanctions or is amenable to available penalties is the whether the offender has been deterred from further criminal conduct."[45] In this case, the presentence investigation report reveals that, despite the imposition of fines, probation, jail terms, and a ten-month period of imprisonment, McNeal has engaged in a continuing course of criminal conduct since his first offense as a juvenile in 1986, including convictions for petty theft, intoxication, forgery, two counts of receiving stolen property, six counts of disorderly conduct, two counts of resisting arrest, two counts of criminal trespassing, two counts of obstructing official business, and two counts of domestic violence. In fact, his ten-month incarceration for the 1999 felony forgery violation represents the only significant break in this course of conduct after 1995. Moreover, the instant offense was committed within seven months of his release. Accordingly, we do not find that the trial court's determination was erroneous.
McNeal also argues that the trial court erred in its consideration and application of R.C. 2929.12(D)(4), the recidivism factor concerning whether the offender has demonstrated a pattern of substance abuse. In adjudicating sentence, the trial court found, based upon the overall facts in the case and specific circumstances of the incident itself, that McNeal had demonstrated a pattern of alcohol abuse that was related to the offense. McNeal does not dispute that he had been consuming alcohol on the night of the offense; rather, he infers that the court's finding was supported only by his use of alcohol on said night, asserting that an isolated incident of alcohol use does not amount to a demonstrated pattern of abuse and that the record is devoid of any evidence supporting the court's finding. McNeal further claims that the court misapplied the recidivism factor, arguing that the court failed to find that he refuses to acknowledge or receive treatment for a substance abuse problem and concludes, based upon the asserted deficiencies, that the trial court's sentence is unsupported by the record and contrary to law.
R.C. 2929.12(D)(4), provides:
 "The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse."
Although the sentencing factor requires the court to consider whether a defendant has acknowledged the problem or refused treatment, we have found that this does not prevent the court, in the exercise of its discretion, from giving more weight to the abuse problem's role in the immediate offense and criminal history, effects upon the victim and defendant, and duration, than the defendant's recent acknowledgement thereof or attempts at treatment.[46]
In the instant case, the trial court did not make an erroneous, unsupported finding that McNeal has a substance abuse problem. The court indicated that it had carefully reviewed the presentence investigation report and referred to the overall facts in the case and specific circumstances of the incident itself in support of its finding. McNeal admits having consumed alcohol on the night in question, and the presentence investigation report reveals at least two previous incidents of belligerent, violent, and abusive conduct precipitated or aggravated by the use of alcohol. Furthermore, because R.C. 2929.12(D) and other related provisions clearly provide that sentencing courts may consider "any other relevant factors[,]" the trial court was free to consider the fact that he had admitted weekly alcohol use and exhibited a pattern of criminal conduct wherein his propensity for violence was apparently exacerbated by the use of alcohol, even in the absence of evidence regarding acknowledgement or treatment of the problem. Therefore, we do not find that McNeal has clearly and convincingly demonstrated that the sentence was unsupported by the record or contrary to law. Accordingly, McNeal's second assignment of error is overruled.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
BRYANT and HADLEY, JJ., concur.
[1] See Evid.R. 801; Evid.R. 802.
[2] State v. Dever (1992), 64 Ohio St.3d 401, 410, 1991-Ohio-1498,596 N.E.2d 436.
[3] State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus; State v. Long (1978), 53 Ohio St.2d 91, 98,372 N.E.2d 804.
[4] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
[5] AAAA Enterprises, Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.
[6] State v. Lester (Dec. 14, 1994), Summit App. No. 16691; Evid.R. 803(1) Staff Notes.
[7] State v. Jordan (Nov. 13, 1997), Cuyahoga App. No. 70783, dismissed, appeal not allowed by 81 Ohio St.3d 1467, 690 N.E.2d 1287; Evid.R. 803(1) Staff Notes; Lester, supra.
[8] State v. Wages (1993), 87 Ohio App.3d 780, 787, 623 N.E.2d 193; Coxv. Oliver Machinery Co. (1987), 41 Ohio App.3d 28, 35-36,534 N.E.2d 855.
[9] Id.
[10] Cox, 41 Ohio App.3d at 36.
[11] State v. Jefferson (April 3, 2000), Stark App. No. 1999CA00218;State v. Godbolt (April 19, 1999), Licking App. NO. 98CA00101, dismissed, appeal not allowed by 86 Ohio St.3d 1461, 715 N.E.2d 565;State v. Reed (Oct. 21, 1999), Hancock App. No. 5-99-25.
[12] See Godbolt, supra.
[13] The Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the states through theFourteenth Amendment, provides:
"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."
Section 10, Article I of the Ohio Constitution provides:
"In any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face * * *."
[14] State v. Madrigal (2000), 87 Ohio St.3d 378, 384, 1997-Ohio-0098,721 N.E.2d 52.
[15] Maryland v. Craig (1990), 497 U.S. 836, 845, 110 S.Ct. 3157,111 L.Ed.2d 666.
[16] Dever, 64 Ohio St.3d at 415; California v. Green (1970),399 U.S. 149, 155-56, 90 S.Ct. 1930, 26 L.Ed.2d 489; Dutton v. Evans
(1970), 400 U.S. 74, 86, 91 S.Ct. 210, 27 L.Ed.2d 213.
[17] Dever, 64 Ohio St.3d at 415.
[18] Madrigal, 87 Ohio St.3d at 385.
[19] See, e.g. McCormick on Evidence § 298, at 709-711 (Edward W. Cleary ed., 2d ed. 1972); Stanley A Goldman, Not So "Firmly Rooted":Exceptions to the Confrontation Clause, 66 N.C. L.REV. 1, 26-31 (1987).
[20] Dever, 64 Ohio St.3d at 417 (see, also, paragraph three of syllabus).
[21] See, e.g., Cutchin v. State (Md.App. 2002), 792 A.2d 359, 362;Green v. St. Francis Hosp., Inc. (Del.Supr. 2002), 791 A.2d 731, 736;Reedus v. Stegall (E.D.Mich. Nov. 28, 2001), 2001 WL 1840791 at *6; Humphrey v. State (Alaska App., Feb. 3, 1999), 1999 WL 46541 at *2; Statev. Wooten (Ariz.App. Div. 1, 1998), 972 P.2d 993, 1002; State v. Brown
(La.App. 2 Cir., 1993), 618 So.2d 629, 634; U.S. v. Vega (9th Cir. 1989), 883 F.2d 1025 (Table).
[22] Jordan, supra.
[23] State v. Storch (1993), 66 Ohio St.3d 280, 1991-Ohio-2218,612 N.E.2d 305.
[24] Id. at 291.
[25] Id. at 293-294.
[26] Id. at 280-283.
[27] Id. at 291; State v. McWhite (1993), 91 Ohio App.3d 508, 511-512,632 N.E.2d 1320.
[28] See Delaware v. Van Arsdall (1986), 475 U.S. 673, 684,106 S.Ct. 1431, 1438, 89 L.Ed.2d 674; State v. Williams (1983), 6 Ohio St.3d 281,290, 452 N.E.2d 1323, paragraph six of syllabus.
[29] Van Arsdall (1986), 475 U.S. at 684, 106 S.Ct. at 1438,89 L.Ed.2d 674, citing Chapman v. California (1967), 386 U.S. 18, 23, 87 S.Ct. 824,827, 17 L.Ed.2d 705, 710, and Harrington v. California (1969),395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284.
[30] Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d 674;Madrigal, 87 Ohio St.3d at 388, citing Chapman, 386 U.S. at 23,87 S.Ct. at 827, 17 L.Ed.2d at 710; Williams, 6 Ohio St.3d at 290, citingHarrington, 395 U.S. at 254, 89 S.Ct. at 1728, 23 L.Ed.2d 284; State v.Murphy (2001) 91 Ohio St.3d 516, 555, 1998-Ohio-1586, 747 N.E.2d 765.
[31] State v. Martin (1999), 136 Ohio App.3d 355, 362,736 N.E.2d 907.
[32] Id.; State v. Williams (2000), 136 Ohio App.3d 570, 572,737 N.E.2d 139.
[33] State v. Mitchell (March 28, 2002), Crawford App. No. 3-01-20, 2002-Ohio-1400, at ¶ 9.
[34] State v. Jones (2001), 93 Ohio St.3d 391, 400, 2001-Ohio-1341,754 N.E.2d 1252.
[35] R.C. 2929.14(A)(2).
[36] R.C. 2929.13(D).
[37] See R.C. 2929.14(C).
[38] R.C. 2929.19(B)(2)(d); State v. Edmonson (1999), 86 Ohio St.3d 324,1999-Ohio-110, 714 N.E.2d 131.
[39] See R.C. 2929.12(A), (B), (C), (D), and (E).
[40] State v. Arnett (2000), 88 Ohio St.3d 208, 215; State v. Fox
(1994), 69 Ohio St.3d 183, 193; State v. Mills (1992), 62 Ohio St.3d 357,376.
[41] Arnett, 88 Ohio St.3d at 215.
[42] Id.
[43] State v. Wobbler (April 23, 2002), Putnam App. No. 12-01-13, 2002-Ohio-2080 at ¶ 26-27; State v. McLemore (2000),136 Ohio App.3d 550, 552-553, 737 N.E.2d 125.
[44] Wobbler, supra.
[45] Id. at ¶ 20.
[46] Id. at ¶ 26.