882 So.2d 1212 (2004)
STATE of Louisiana, Appellee
v.
Billy Lynn HENDRICKS, Appellant.
No. 38,945-KA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 2004.
*1213 Kenota P. Johnson, for Appellant.
Paul J. Carmouche, District Attorney, Shenequa Grey, Tommy J. Johnson, Assistant District Attorney, for Appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
WILLIAMS, J.
The defendant, Billy Lynn Hendricks, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. After a jury trial, the defendant was found guilty as charged. He was sentenced to serve life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence, with credit for time served. Defendant's motions for a new trial and a post-verdict judgment of acquittal were denied.
The defendant appeals his conviction, urging the following assignments of error: (1) the state failed to present sufficient evidence to support a second degree murder conviction; (2) the autopsy photographs were improperly admitted into evidence because their prejudicial effect outweighed any probative value; and (3) the trial court erred in overruling the defense's objection to the state's use of demonstrative evidence during its closing argument. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
On December 8, 2001, the defendant strangled his biological mother to death in her home in Shreveport, Louisiana. After the murder, the defendant drove his mother's car to Edmond, Oklahoma, where his adoptive family resides. The next day, Elizabeth Buck, the defendant's adoptive sister, contacted the Edmond police.
Officer Trint Trip of the Edmond Police Department responded to Mrs. Buck's *1214 telephone call. He testified that the defendant told him he had killed his mother in Shreveport and he had driven her car from Shreveport to Edmond. When Officer Trip asked him about specific details, the defendant stated that he and his mother had an argument over money, his mother came toward him, he tried to push her off and then he choked her (which he demonstrated with hand gestures). According to Officer Trip, the defendant also stated that while he was choking his mother, they struggled and fell on the floor. The defendant informed the officer that his mother stopped breathing and he attempted to assist her with CPR, but was unsuccessful. He stated that he panicked and left the house in his mother's car.[1] Edmond police officers then contacted the Caddo Parish Sheriff's Department. When the Caddo Parish deputies arrived at the victim's residence, they found her body on the living room floor. The defendant was taken into custody by the Edmond police and later transferred to the custody of the Caddo Parish Sheriff's Department.
A unanimous jury found the defendant guilty as charged of second degree murder. He was sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence. After his motions for new trial and post-verdict judgment of acquittal were denied, the defendant appealed.

DISCUSSION

Sufficiency of the Evidence
The defendant contends the state failed to present sufficient evidence to support his conviction. He admits that he is guilty of his mother's death; however, he argues that he should have been convicted in accordance with LSA-C.Cr.P. art. 814 of the responsive verdict of manslaughter, a violation of LSA-R.S. 14:31. The defendant asserts that he killed the victim in "sudden passion" or "heat of blood" during a fight; thus, he did not have the requisite specific intent to kill or inflict great bodily harm.
The standard of appellate review for a sufficiency of the evidence claim is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150 and 2001-2087 (La.4/19/02), 813 So.2d 424. Thus, for a second degree murder conviction, the state was required to prove beyond a reasonable doubt that the defendant killed his mother and that he had the specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. *1215 State v. Graham, 420 So.2d 1126 (1982); State v. Van Sales, 38,138 (La.App.2d Cir.3/3/04), 867 So.2d 849.
Manslaughter is a homicide which would be second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. LSA-R.S. 14:31. "Sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (1986). In order to be entitled to the lesser verdict of manslaughter, the defendant was required to establish by the preponderance of the evidence that he killed his mother in a "sudden passion" or "heat of blood." State v. Lombard, supra; State v. Brooks, 36,855 (La.App.2d Cir.3/5/03), 839 So.2d 1075, writ denied, XXXX-XXXX (La.11/7/03), 857 So.2d 517.
The record shows that the state met its burden of proving beyond a reasonable doubt that the defendant was guilty of second degree murder. The defendant confessed that he choked his mother to death. Moreover, the state presented testimony to prove that the defendant had the requisite specific intent at the time of the murder. Caddo Parish Sheriff's Detective Marianna McClure testified that the defendant asked if a knife blade was found in his mother and claimed that he had also swung a knife at her. Crystal Gibson, the victim's neighbor, testified that she heard the defendant and his mother argue all the time, frequently about money. Gibson recalled an incident, two to three weeks before the victim's death, where the defendant pushed his mother into her car and slapped her, knocking her to the ground. Lynda Gail Coggins, Gibson's mother and the victim's neighbor, testified that approximately one or two days before the victim was killed, the victim told her that the defendant had slapped her and picked up a kitchen knife. James Gadson, the victim's friend, testified that about two or three nights before she was killed, the victim told him that the defendant had choked her. Finally, Dr. George McCormick, II, the Caddo Parish coroner, testified that the victim's death was caused by the loss of oxygen due to manual strangulation, that bruises on the victim's body suggested a struggle while she was being choked and that there was no evidence to indicate that the defendant had performed CPR on the victim.
The defendant failed to prove by a preponderance of the evidence that he was immediately provoked to the extent and with the effect necessary to deprive an average person of his self-control. Thus, the defendant did not prove that the jury should have returned the responsive verdict of manslaughter. After a thorough review of this record, we conclude that there was ample evidence to support the defendant's conviction of second degree murder. This assignment of error lacks merit.

Admission of Autopsy Photographs
The defendant contends the autopsy photographs (State's Exhibits S-65 to S-71) were improperly admitted into evidence because their prejudicial effect outweighed any probative value. Specifically, the defendant asserts that the photographs were gruesome, overbearing and redundant. The trial court concluded that the probative value of the photographs outweighed their prejudicial effect. The court denied the defense's motion in limine to restrict or prohibit the use of the photographs.
*1216 The test of admissibility for allegedly gruesome photographs is whether the probative value of the photographs outweighs the probable prejudicial effect that may result from their display to the jury. State v. Lindsey, 404 So.2d 466 (La.1981). Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Lindsey, supra; State v. Ruffins, 32,870 (La.App.2d Cir.12/10/99), 748 So.2d 614; State v. Washington, 30,866 (La.App.2d Cir.8/19/98), 716 So.2d 936, writ denied, 1998-2473 (La.1/8/99), 734 So.2d 1229. A trial court's ruling concerning the admissibility of photographs will not be disturbed on appeal unless the prejudicial effect of the photographs, in fact, clearly outweighs the probative value. State v. Lindsey, supra.
In State v. Morris, 245 La. 175, 157 So.2d 728 (1963), the sole issue during the murder trial was whether the killing was intentional or whether it was committed in the heat of passion. The Louisiana Supreme Court held that it was reversible error for the trial court to allow the admission of photographs taken while an autopsy was in progress. The photographs showed the lengthy incision of the autopsy, equipment withdrawing the body cavity's bloody contents, and the coroner and his assistant holding some of the victim's organs.
The photographs in the present case are distinguishable from those admitted into evidence in State v. Morris, supra. Here, the autopsy photographs show the victim's injuries as well as postmortem decomposition (which the coroner instructed the jury to disregard). The photographs do not show excessive blood or exposed body cavities. Furthermore, the photographs are not redundant. Although the majority of the photographs focus on the face and upper body, each photograph shows a different view or a particular aspect of the victim's body.
The state utilized the photographs to assist the jury in understanding the coroner's testimony with regard to the cause of death, bruises on the victim's body evidencing a beating, the victim's possible struggle and the lack of evidence that CPR had been attempted. Thus, the probative value of the photographs clearly outweighed any prejudicial effect that may have resulted from their display to the jury.
Consequently, we find no abuse of the trial court's discretion in admitting the autopsy photographs into evidence. This assignment of error lacks merit.

Demonstrative Evidence in Closing Argument
Finally, the defendant contends the state improperly introduced new evidence during closing argument in violation of LSA-C.Cr.P. art. 774. The defendant argues that the state's use of a clock to demonstrate the passage of one minute, the state's theory of the estimated time period necessary for death by strangulation, constituted the improper introduction of demonstrative evidence during its closing argument.
LSA-C.Cr.P. art. 774 provides that closing argument must be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom and to the law applicable to the case. However, if the closing argument is expressly or impliedly based upon the evidence, then no error is committed. State v. Lockett, 332 So.2d 443 (La.1976).
In the instant case, the state's use of a clock to display the lapse of one minute was not new evidence. During the trial, *1217 the defense cross-examined Dr. McCormick with regard to whether death by strangulation could result in one minute or less. The coroner responded that it was possible. A review of the record shows that the state incorporated this issue into its closing argument, adding its description of the victim's death during the passing minute. Thus, the state's use of the clock to illustrate the lapse of one minute was within the scope of the evidence previously admitted during the trial. Therefore, we conclude that the state did not improperly introduce demonstrative evidence during its closing argument. This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] On the other hand, Mrs. Buck testified that the defendant told her and Officer Trip that he and his mother had been drinking, they got into a fight, he choked his mother and then passed out. Mrs. Buck stated that the defendant said when he regained consciousness, he checked for his mother's pulse and attempted to perform CPR on her. Jim Buck, Mrs. Buck's husband, testified that the defendant also told his adoptive mother a similar version of the events of the homicide.