908 So.2d 1265 (2005)
STATE of Louisiana, Appellee
v.
Roy HOPKINS, Appellant.
No. 39,730-KA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 2005.
*1269 Louisiana Appellate Project, by Paula C. Marx, Lafayette, Joy R. Jackson, Trial Counsel, for Appellant.
Roy Hopkins, Pro se.
James D. Caldwell, District Attorney, Kenneth A. Brister, Laurie R. Brister, Assistant District Attorneys, for Appellee.
Before STEWART, PEATROSS and MOORE, JJ.
STEWART, J.
The defendant, Roy Hopkins, was convicted of aggravated rape, principal to armed robbery, accessory after the fact to simple arson resulting in damages amounting to $500 or more, and simple burglary. He was sentenced to life imprisonment without benefits, 45 years at hard labor without benefits to run consecutively to any other sentence, 5 years at hard labor to run concurrently to any other sentence, and 12 years at hard labor to run consecutively to any other sentence, respectively for the above convictions. He appeals his convictions on the grounds that he was *1270 denied the presumption of innocence, that the trial court erred in denying challenges for cause, that the prosecution violated discovery rules, and that the evidence was insufficient to establish guilt on the accessory after the fact to simple arson charge. He also argues that the trial court erred in imposing consecutive sentences. Finding no error, we affirm the convictions and sentences.

FACTS
The convictions in this matter arise from a crime spree in Lake Providence, Louisiana, on December 28, 2001, by the defendant, his brothers Willie Earl and James Hopkins, his nephew Ronald Coleman, and his brother-in-law Ronnie Barnes. While drinking and hanging out at the defendant's apartment, the group decided to "hit a lick," meaning commit a crime to get some money. They loaded tools, including a screwdriver and tire iron, into Ronald Coleman's car and passed out "little thin rubber gloves." They drove to the Panola Pepper Company ("Panola") where the defendant, Willie Earl Hopkins, and Ronnie Barnes broke into a building by forcing a door open and stole a money box, money bags, and a telephone. On their way out, Willie Earl set a fire in the building. The fire caused over two million dollars in damages to the business.
The five men returned to the defendant's apartment where they opened the money box and divided the small amount of money which totaled about $100. Because they had not gotten much money, they decided to "hit another lick." They drove to the Economy Inn where the defendant and Willie Earl, who was armed with a gun he got from Ronald Coleman, went to rob the motel while the others waited nearby with the car.
As the defendant and Willie Earl stood at the night check-in window, a young woman drove up to get a room for the night. The defendant and Willie Earl approached the woman and demanded money. Willie Earl fired a shot in the air and hit the woman on her face with the pistol. After she gave them all of her money, fifteen dollars and change, the defendant took her wedding ring. The two men then took the woman behind a row of hedges and raped her while Willie Earl held a gun to her head. After a car went by, the defendant and Willie Earl led the woman to a field behind the motel where they continued to rape her. When a police officer responded to the motel owner's report of a gunshot, he saw the two men dragging the victim into the field. One of the men opened fire on the police officer who returned fire and called for back-up. When back-up units arrived, the police began sweeping the field. The two men finally left the victim and ran in opposite directions. Willie Earl was caught, but immediately released when an officer recognized him. On orders of the chief, he was caught again and placed in custody. The defendant, who lost his shoes in the chase, ran to a relative's house where he was given clean clothes to wear and driven home. The police found the defendant's muddy shoes in the field behind the Economy Inn, and they found the victim's wedding ring in the defendant's apartment.
For his part in the one-night crime spree, the defendant was convicted of aggravated rape, principal to armed robbery, accessory after the fact to simple arson resulting in damages amounting to $500 or more, and simple burglary. The trial judge denied a motion for a new trial. After reviewing a pre-sentence investigation report ("PSI"), the trial judge sentenced the defendant to life imprisonment without benefits for the aggravated rape, 45 years at hard labor without benefits consecutive to any other sentence for the *1271 principal to armed robbery, 5 years at hard labor concurrent to any other sentence for the accessory after the fact to simple arson, and 12 years at hard labor consecutive to any other sentence for the simple burglary. A motion to reconsider the sentence was denied, and this appeal followed.

DISCUSSION
The defendant has asserted five assignments of error. First, he asserts that he was denied the presumption of innocence by the prosecutor's description of the presumption to prospective jurors as a "legal fiction." Second, he asserts that the trial judge erred in denying challenges for cause as to three prospective jurors. Third, he asserts that the evidence was insufficient to convict him of accessory after the fact to simple arson. Fourth, he asserts that the trial court erred in imposing consecutive sentences. Fifth, he asserts that the state violated the discovery rules and deprived him of a fair trial by introducing photographs of the victim after previously advising the court that there were none and that the state did not intend to introduce any at trial. For the reasons that follow, we find no merit in any of these assignments of error.

Sufficiency of the Evidence
The defendant argues that the evidence was insufficient to convict him of accessory after the fact to simple arson, because he did not know about the fire until the next day and did not help Willie Earl "evade the police or hide the crime." The state argues that the defendant knew or had reasonable grounds to know that Willie Earl committed arson at Panola and that he helped Willie Earl by throwing the stolen money bags out the car window and quietly returning to his apartment so no one would hear them. The state claims that the defendant used "his apartment to shield everyone from getting arrested."
An accessory after the fact is any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment. La. R.S. 14:25. Simple arson is the intentional damaging by any explosive substance or the setting fire to any property of another, without the consent of the owner and except as provided in R.S. 14:51 (aggravated arson). La. R.S. 14:52(A).
To convict of accessory after the fact to simple arson, the state must prove beyond a reasonable doubt that the felony was committed before the defendant rendered assistance to the felon, that the defendant knew or had reasonable grounds to know that the felony was committed, and that the defendant gave aid to the felon personally under circumstances that indicate either that he actively desired that the felon avoid or escape arrest, trial, conviction, or punishment or that he believed that one of these consequences was substantially certain to result from his assistance. State v. Chism, 436 So.2d 464, 468 (La.1983). A person can be convicted as an accessory after the fact if he rendered aid with either specific or general intent that the felon avoid or escape arrest, trial, conviction, or punishment. Id. at 467.
A sufficiency of the evidence claim requires us to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d *1272 1333. The Jackson standard applies in cases involving both direct and circumstantial evidence. The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant is guilty of every essential element of the crime. State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Our authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier-of-fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, 02-3090 (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048.
The record establishes the commission of simple arson by Willie Earl Hopkins. Ronnie Barnes testified that he saw Willie Earl start a fire by lighting some paper in an office at Panola and that the defendant, Roy Hopkins, was in the room with Willie Earl when he started the fire. Barnes stated that he left the office ahead of Willie Earl and the defendant. Barnes also testified that saw a "blaze in the office window" as they drove away and as Willie Earl made a statement about being glad he had done something against Mr. Brown, the owner of Panola. Testimony that the fire was determined to be arson was given by Mr. Brown, the insurance investigator Charles Rand, and East Carroll Parish fire chief Lloyd Chapman. Mr. Brown also established that the fire caused damages totaling two million dollars. Even though defendant testified that he did not see either a fire or smoke and that he did not hear any statement by Willie Earl, the evidence was sufficient for the jury to have concluded beyond a reasonable doubt that Willie Earl committed simple arson by intentionally setting a fire in the office at Panola without the owner's consent and that the fire caused damages in excess of $500. See La. R.S. 14:52(A) and (B). Under La. R.S. 14:25, a person may be convicted of accessory after the fact even though the principal felon may not have been arrested, tried, convicted or amenable to justice, but we note that Willie Earl has been convicted of simple arson and that the conviction was affirmed in State v. Hopkins, 39,258 (La.App. 2d Cir.3/2/05), 897 So.2d 854.
The evidence was also sufficient for the jury to conclude beyond a reasonable doubt that the defendant knew or had reasonable grounds to know that Willie Earl committed the felony of simple arson. The jury obviously found Barnes's statement that the defendant was in the office when the fire was started to be more credible than the defendant's testimony that he never saw the fire. Because there was no internal contradiction or irreconcilable conflict with physical evidence, Barnes' testimony alone was sufficient for the jury to reach the requisite factual conclusion that the defendant either knew or had reason to know about the arson. The jury could have reasonably concluded that if the defendant was in the room when *1273 the fire was lit, then he knew or had reason to know that his brother committed simple arson.
Having determined that a felony was committed and that the defendant either knew or had reasonable grounds to know of the commission of the felony, the final inquiry is whether the defendant rendered aid to his brother under circumstances indicating either that he actively desired that Willie Earl avoid or escape arrest, trial, conviction, or punishment or that he believed that one of these consequences was substantially certain to result from his assistance. James Earl Hopkins testified that the defendant threw a money bag taken from Panola out of the car window as they drove back to the apartment. Barnes gave similar testimony. The defendant admitted that he failed to report the crime, but he denied doing anything to protect his brother from arrest. However, he testified that the group returned to his apartment after leaving Panola. He described how he "closed the doors lightly, stepped lightly so wouldn't nobody hear no commotion of peoples [sic] going back to my apartment." He explained that he went around to his back door and let the others in through the front door. Then, they proceeded to pry open the stolen money box and divide the money.
In Chism, supra, at Footnote 1 on page 467, the court referred to an illustrative list from article 242.3 of the Model Penal Code of the types of "aid" contemplated by La. R.S. 14:25. The list includes harboring or concealing the criminal and concealing or destroying evidence of the crime. Id. The testimony established that the defendant knew or should have known about the fire, that he obviously did nothing to put it out or report it, that he rode away from the crime scene with Willie Earl and the others in a car, that he threw evidence of the burglary and subsequent arson from the car window, and that he allowed his brother and the others to quietly enter his apartment so as to avoid anyone hearing them. Clearly, the defendant acted to conceal or destroy evidence associated with the crime when he threw a money bag out the car window, and he acted to conceal or harbor Willie Earl by assisting him to avoid detection when entering his apartment. We find that the evidence suffices for the jury to have concluded beyond a reasonable doubt that the defendant rendered aid to Willie Earl certainly with general intent that he avoid or escape arrest, trial, conviction, or punishment for simple arson. For these reasons, we find sufficient evidence to support the conviction of accessory after the fact to simple arson.

The Presumption of Innocence
Defendant claims that he was deprived of a fair trial by the prosecutor's statement during voir dire referring to the presumption of innocence as a "legal fiction." He claims that the prosecutor's explanation of the presumption left the impression that it "would apply only when no evidence is presented at trial." The state replies that its explanation of the presumption was correct when taken as a whole and notes that the trial judge agreed that the presumption was explained correctly.
Every person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public, and impartial trial. La. Const. art. I, § 16. The principle that there is a presumption of innocence in favor of the accused is the undoubted law axiomatic and elementary; and its enforcement lies at the foundation of the administration of our criminal law. Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895). The presumption of innocence is a "conclusion drawn by the law" by which a defendant *1274 must be acquitted unless proven to be guilty. Id.
To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Indeed, "[t]wo of the most fundamental features of our criminal justice system are the presumption of innocence and the requirement that the state prove each element of a crime beyond a reasonable doubt." State v. Taylor, 396 So.2d 1278, 1279-1280 (La.1981).
A constitutional error does not automatically require reversal of a conviction. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), partially overruled by Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 1717-22, 123 L.Ed.2d 353 (1993) (holding that the "harmless error beyond a reasonable doubt" analysis is not applicable in habeas cases); State v. Gibson, 391 So.2d 421 (La.1980). The substantial rights of an accused must be affected before comments such as those at issue result in a reversal of a judgment of conviction. La. C. Cr. P. art. 921.
During voir dire, the prosecutor called the presumption of innocence a "legal fiction" and went on to explain:
In other words it's important that we are able to stop and be fair and hear the evidence, but that doesn't mean that we don't think that somebody did something wrong or they wouldn't be here. The presumption of innocent [sic] is for the courtroom and the fact that when you are asked to give an opinion in the courtroom, whether you believe somebody [sic] really is any reason for them to be here and I certainly, there's a reason why every Defendant [sic] comes to court. They have normally been charged or they have come through a grand jury indictment, such as in this case. The problem is not whether you have fixed or formed an opinion, but whether the opinion is fixed, or whether you can be fair and overcome that. So the presumption of innocence is if the State was an idiotic [sic] and produced no evidence, the defendant walks and you have to legally hold this legal fiction whether they were guilty or not guilty if we don't have enough evidence, you are bound to turn loose. That's going to be your oath and you should do that no matter how the case got here. So we don't live in a vacuum and we know there is a reason people are here. We could have the wrong defendant in the courtroom. No matter how bad the crime is the State has got to prove that this crime happened and that the defendant is the one that did it or participated in it. To overcome that presumption. So if the state produced nothing ... you would have to turn him loose and that's true. I want to let you know it's an artificial kind of presumption. It's what we called a legal fiction, there's no harm in thinking, well, there is a reason why someone is here....
Defense counsel contemporaneously objected, and a side-bar took place. The trial judge overruled the objection, noting that the presumption is a legal fiction, the prosecutor was correct in his analysis, and the defendant was in court pursuant to an indictment. The trial judge warned the attorneys that misstating the law could lead to a mistrial, and he noted that he would instruct the jury at the end.
A legal fiction is an assumption of fact by the court as a basis for deciding a legal *1275 question. Black's Law Dictionary, 913 (8th Ed.2004). A legal fiction assumes something is true even though it may be untrue. In the criminal justice context, a defendant is presumed to be innocent even though he may not be in fact. The state bears the burden of proving the defendant's guilt. If the state fails to meet the burden of proving the elements of the crime beyond a reasonable doubt, then the conclusion drawn by the law is that the defendant is innocent. While the state may have used a poor choice of words in referring to the presumption of innocence as a legal fiction, its explanation was not wrong. The state made it clear that it had the burden of proving the defendant's guilt, that the defendant charged with the crime could be the wrong person, and that the jury would have to find for the defendant if the state did not prove his guilt. After the trial judge's ruling on defense counsel's objection, the prosecutor reiterated that the defendant is presumed innocent. Additionally, defense counsel presented knowledgeable explanations of the presumption of innocence and reasonable doubt to the jury.
Even if the prosecutor's use of the term "legal fiction" was error, the use of the term and the prosecutor's statement quoted above do not constitute reversible error. The remarks were made early in the proceedings before the jury was seated, and the trial judge gave correct instructions to the jury prior to deliberations. Considering the overwhelming evidence of the defendant's guilt presented at trial, we cannot say that the legal fiction reference early in the proceedings had any impact on the jury's verdicts of guilt. Close scrutiny of the trial transcript convinces us that the guilty verdicts were surely unattributable to the "legal fiction" comment. Thus, we find no merit in this assignment of error.

Challenges for Cause
The trial court denied challenges for cause by defense counsel as to prospective jurors R.M. and Melba King, thereby forcing the defense to exhaust two peremptory challenges. After the defense exhausted all its peremptory challenges, the trial court denied a challenge for cause as to Danny Ray Fortenberry who served on the jury. The defendant argues that these denials were in error and deprived him of the right to be tried by an impartial jury.
The purpose of voir dire is to determine the qualifications of prospective jurors by testing their competency and impartiality and to assist counsel in articulating intelligent reasons for exercise of cause and peremptory challenges. State v. Ball, 00-2277 (La.1/25/02), 824 So.2d 1089, cert. denied, Ball v. Louisiana, 537 U.S. 864, 123 S.Ct. 260, 154 L.Ed.2d 107 (2002). Challenges for cause are governed by La. C. Cr. P. art. 797 which states:
The state or the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

*1276 (4) The juror will not accept the law as given to him by the court; or
(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.
Under La. C. Cr. P. art. 800, a defendant may not assign as error a ruling refusing to sustain a challenge for cause, unless he objects at the time of the ruling and states the nature of the objection and the grounds for it.
When appealing the denial of a challenge for cause, a defendant whose peremptory challenges have been exhausted need only show the erroneous denial of a challenge for cause; no showing of prejudice is required. State v. Coates, 27,287 (La.App. 2d Cir.9/27/95), 661 So.2d 571, 579, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365. However, a trial court has broad discretion in ruling on challenges for cause and will be overturned only when review of the entire voir dire reveals an abuse of discretion. Id. See also State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278, 1281, which addresses the trial court's discretion as follows:
A refusal by a trial judge to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. "[A] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably inferred." (Citations omitted.)
The declaration of an otherwise fair and impartial juror that he or she was previously the victim of a crime similar to that for which the defendant stands charged does not render the juror incompetent to serve. State v. Robinson, 36,147 (La.App. 2d Cir.12/11/02), 833 So.2d 1207. Furthermore, cases have upheld the denial of challenges for cause of prospective jurors whose relatives have been crime victims when the juror states that he or she would be fair, impartial, and not prejudiced against the defendant. State v. Walker, 577 So.2d 770 (La.App. 2d Cir. 1991), writ denied, 581 So.2d 704 (La. 1991); State v. Thom, 615 So.2d 355 (La. App. 5th Cir.1993).
If a juror who has acquired knowledge about the case through the media can sufficiently lay aside his impression of the defendant's guilt or innocence and render a verdict based on the evidence presented, he is competent to serve as a juror. State v. Frank, 99-0553 (La.1/17/01), 803 So.2d 1; State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713. A juror's association with law enforcement agencies or personnel will not alone disqualify him from service. State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044, cert. denied, ___ U.S. ___, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005); State v. Loyd, 35,637 (La.App. 2d Cir.2/27/02), 810 So.2d 1214, writ denied, 02-1159 (La.4/21/03), 841 So.2d 779. The fact that a prospective juror is "friends" with, or related to, law enforcement officials or the district attorney is not grounds for automatic exclusion for cause. Manning, supra.
Defense counsel sought to exclude R.M. for cause on the grounds that she had been a victim of rape. The trial court denied the challenge stating that there was no indication R.M. was vindictive and that she could separate what happened to her *1277 from the matter at hand. On appeal, the defendant argues that the rape along with other factors revealed by R.M. during voir dire are such that bias, prejudice, and the inability to render judgment according to law may be reasonably inferred.
During voir dire, R.M., a reference librarian, admitted that she knew about the case stating, "I read it in the paper, plus we have to keep files on things like this at the library." However, she did not indicate that her knowledge of the case caused her to form an opinion. She thought that some of the defendant's relatives lived across the street from her, but she did not know the defendant. She indicated that the neighbors would not affect her ability to be fair and impartial. She also admitted that she knew some of the potential witnesses and Mr. Brown, Panola's owner, but she stated that this would not affect her opinion on the case. Defense did not base its challenge for cause on any of these grounds. Nothing in voir dire suggests that these grounds would be a cause for finding bias or prejudice on R.M.'s part.
R.M. initially indicated that the aggravated rape charge might affect her because she had been raped. But upon further questioning by both the state and defense counsel, she stated that she could be fair. She recognized that defendant was not the person who had raped her, and she stated that the trial would not cause flashbacks to her own rape. She admitted that she might think about it "but not to the point that I would think of that person as being the same person who did what he did with me." She repeated to defense counsel that she could be fair.
R.M. was candid about having been raped, and after questioning, stated multiple times that her experience would not affect her judgment and that she could separate her experience from the case at hand. She stated that she could be fair. Nothing in the record suggests that she was being untruthful or shows prejudice against the defendant. The totality of her responses indicate her honesty and willingness to be a fair and impartial juror. We find no abuse of discretion in the trial court's denial of the challenge for cause.
Defense counsel challenged Melba King for cause on the grounds that she had formed on opinion on the case and could not be fair. During voir dire, Ms. King stated that she had already formed an opinion. She explained that she had previously served on an unrelated grand jury and that she "looked at the State's evidence as what brings it to petit jury." Ms. King's responses indicated her awareness from serving on a grand jury that there was an evidentiary basis for the defendant, who was indicted, being on trial. The state tried to rehabilitate Ms. King as follows:
Ms. King, you stated that you had already formed an opinion. That's fine. And because you know the system, that's fine too. But you have to give the person in trial the benefit of the presumption of innocence and we have to have the right person no matter how hard it is. If you were on the grand jury, I'm pretty sure I, was the DA? Okay. Then you know it's important to do the right legal thing. So if the State doesn't prove its case you've already answered that you could bring back a verdict of not guilty, then you should do that if we don't prove our case. Then can you do that? Okay, your [sic] nodding your head yes, affirmatively, okay, then fine.
Ms. King also indicated during voir dire that she understood the law as explained to her.
The trial judge denied the challenge for cause upon concluding that Ms. King realized *1278 the defendant was presumed innocent and said she could be fair and vote for acquittal if the state did not meet its burden of proof. The trial judge noted that Ms. King simply stated what everybody knew about the legal process, namely that there must be probable cause to support an indictment or bill of information.
Under La. C. Cr. P. art. 797, an opinion as to guilt or innocence of the defendant is not a sufficient ground of challenge by itself if the juror declares, and the court is satisfied, that she can render an impartial verdict according to law and evidence. Ms. King indicated that she understood the law as related to her during voir dire. On rehabilitation, the state asked if she could give the defendant the benefit of the presumption of innocence and hold the state to its burden of proof. While there is no verbal response recorded, the record does include the state's recognition of her affirmative head nod and the trial judge's reference to her affirmative response. The trial judge was satisfied and concluded that Ms. King could render an impartial verdict based on the law and evidence. Ms. King's understanding of the legal system is surely not a reason to disqualify her from jury duty. We find that the trial court did not abuse its broad discretion in denying this challenge for cause.
Lastly, the defense challenged Danny Ray Fortenberry for cause on the grounds that his son had been a victim of crime and that he was a friend of the Brown family. During voir dire, Mr. Fortenberry informed the court that he had been friends with the Browns for a long time and that their children went to school together. However, he stated that the relationship would not affect his judgment on the case, that he could be fair, and that he only wanted the court to be aware that he knew the Browns. Mr. Fortenberry also informed the court that his father had been a prison superintendent and that he was first cousins with a potential witness; however, he made clear that these relationships would not affect his ability to be impartial. Mr. Fortenberry also stated that his son had been mugged a few years ago, and he indicated that he did not believe his son's experience would make him uneasy or affect his ability to be impartial. However, when questioned by defense counsel as to his ability to be impartial even while both his son and his friends the Browns had been victims of crime, he admitted that there is "always a chance" that he might not be impartial but concluded that he could be impartial. He later told the prosecutor that he had been "merely answering" defense counsel's questions. He stated, "I think I could be fair about anything that goes on in here." He also said that his son's mugging would not affect his decision on the evidence.
The trial judge denied the defense's challenge for cause noting that Mr. Fortenberry was "very up-front and forthright." The trial judge noted that everybody in the community knew the Browns and that Mr. Fortenberry concluded that he could be fair and impartial. Cases have upheld the denial of challenges for cause of prospective jurors whose relative have been victims of crime when the juror states that he or she would be fair, impartial, and not prejudiced against the defendant. See State v. Walker, supra. Mr. Fortenberry was candid in recognizing that his son having been a victim of crime and his knowing the Brown family might be issues, but he repeatedly stated that he could be fair and impartial. His inability to say that these circumstances would "definitely" not impact his thoughts was merely a recognition of human nature. He stated honestly that he could not promise a definite reaction until faced with the situation. We believe that his repeated assurances *1279 that he could be fair outweigh his inability to give a "definite" answer to an question impossible for anyone to answer until the situation is at hand. We find no abuse of the trial court's discretion in denying the challenge for cause.

Discovery Violation
The defendant asserts that he was deprived of a fair trial by the state's introduction of photographs of the victim after the state had previously informed the court and defense counsel that there were no pictures of the victim and that it did not intend to introduce any at trial. The defendant claims that in reliance on the state's statements he "deferred any preparation for evidence of injuries to the victim." The state asserts that it did not know the photographs existed when it made the statement and that the defendant was not prejudiced by use of the photographs at trial. The state also asserts that the photographs were not introduced to show that the defendant had a gun or struck the victim; rather, they were "used to show the physical condition of the victim after the rape" and to corroborate testimony of the victim, the attending physician, and the paramedic.
The purpose of pretrial discovery is to eliminate unwarranted prejudice to a defendant that could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042 (La.1982). Discovery procedures enable a defendant to properly assess the strength of the case against him in order to prepare his defense. State v. Tate, 38,576 (La.App. 2d Cir.8/18/04), 880 So.2d 255, writ denied, 04-2554 (La.1/14/05), 889 So.2d 268. If a defendant is lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error. State v. Ray, 423 So.2d 1116 (La.1982).
Subject to the limitation of La. C. Cr. P. art. 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which: (1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or (2) are intended for use by the state as evidence at trial, or (3) were obtained from or belong to the defendant. La. C. Cr. P. art. 718. When a party fails to comply with the law regulating discovery and inspection, the court may order such party to permit discovery or inspection, grant a continuance, order a mistrial on the defendant's motion, prohibit introduction into evidence of the subject matter not disclosed, or enter any appropriate order, other than dismissal. La. C. Cr. P. art. 729.5.
Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing, or place depicted. State v. Landry, 388 So.2d 699 (La.1980); State v. Hendricks, 38,945 (La.App. 2d Cir.9/22/04), 882 So.2d 1212, writ denied, 04-2833 (La.3/18/05), 896 So.2d 1000. The trial court has great discretion in admitting photographs into evidence, and the court's ruling will not be disturbed absent an abuse of that discretion. State v. Landry, supra.
The record shows that at a hearing on the defense's motion to compel discovery on February 27, 2004, the state informed defense counsel and the court that it neither possessed nor intended to introduce photographs of the victim. The trial court did not rule on the subject. On June 23, *1280 2004, less than a week prior to trial, the state filed a motion and order to obtain evidence used in Willie Earl Hopkins' trial for use at the trial of the defendant in this matter. Included in the evidence were four photographs of the victim taken by an Air Force investigator a couple of days after the rape and robbery. The photographs, which depict fading bruises on the left eye and cheek of the victim, document injuries she sustained when Willie Earl struck her on the face with a gun. The photographs were shown to defense counsel the first day of voir dire. Defense counsel then filed a motion to hold the state in contempt for violation of discovery. The trial court denied the motion, but ordered the state to show defense counsel the original photographs by the end of the day.
As noted by the trial court, even if the state was in contempt for failing to have provided the photographs for discovery or inspection, the state's actions did not prejudice the defendant in his case preparation. The photographs merely support and corroborate the ambulance service and emergency room records entered into evidence as well as testimony given by the attending physician, the paramedic, and the victim, including her statement given immediately after the incident. While the photographs were used to support the victim's testimony that she had been robbed, struck across the face with a gun, and raped at gunpoint, they were not used to prove that the defendant either had a gun or struck the victim. Even without the photographs, defense counsel should have been prepared to defend against the testimony and exhibits that the photographs corroborated. We find no abuse of discretion by the trial court in denying the motion for contempt and allowing introduction of the photographs into evidence. Given the overwhelming evidence supporting the convictions and the relative mildness of the photographs depicting days-old bruises, the outcome of the trial would not have differed if the state had disclosed the photographs earlier.

Sentencing
The defendant complains that the trial court did not provide particular justification for making his sentences for aggravated rape (life imprisonment), principal to armed robbery (45 years), and simple burglary (12 years) run consecutively.
La. C. Cr. P. art. 883 provides that when a defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. We have interpreted La. C. Cr. P. art. 883 as requiring the trial court to give particular justification from the evidence of record when ordering consecutive sentences for crimes arising from a single course of conduct. State v. New, 38,770 (La.App. 2d Cir.8/18/04), 880 So.2d 971, citing State v. Mack, 37,174 (La.App. 2d Cir.6/27/03), 850 So.2d 1035, writ denied, 03-2122 (La.1/1/6/04), 864 So.2d 628.
While La. C. Cr. P. art. 883 may favor concurrent sentences, a trial court retains the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461; State v. Feaster, 36,868 (La.App.2d Cir.3/5/03), 840 So.2d 675. Among the factors to be considered are the defendant's criminal history, State v. Jacobs, 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2d Cir.1986), writ denied, 496 *1281 So.2d 355 (La.1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La. App. 4th Cir.1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied, 435 So.2d 433 (La.1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); the defendant's apparent disregard for the property of others, State v. Parker, 503 So.2d 643 (La.App. 4th Cir. 1987); and the potential for defendant's rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983), and State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir.1987).
This court has also held that the failure to articulate specific reasons for imposing a consecutive sentence does not require a remand if the record provides an adequate factual basis to support the consecutive sentence. State v. Hampton, 38,017 (La. App. 2d Cir.1/28/04), 865 So.2d 284, writ denied, 04-0834 (La.3/11/05), 896 So.2d 57.
As the defendant has asserted, the trial judge did not specifically state reasons for imposing consecutive sentences for aggravated rape, armed robbery, and simple burglary. However, the trial judge did articulate specific factors for sentencing and in doing so provided an adequate factual basis to support the consecutive sentences. At the sentencing hearing, the trial judge noted that the defendant and his brother, without justification, robbed a young woman "at gunpoint and dragged her to an open field behind the motel and brutally raped her." The court described the crime as "particularly brutal" and noted that the victim sustained physical injuries that required medical attention as well as emotional trauma for which "she continues to require psychological therapy." The trial judge also stated that the defendant "burglarized the office building of a family who had befriended his family in the past by providing jobs to family members and aiding the family financially by assisting with burial expenses." The trial judge noted that the crime spree in which the defendant played a leading role caused economic damages and loss of jobs in the community.
The trial judge considered the defendant's age, education, family and work history. The court noted that the defendant admitted to being only a "social drinker," to having consumed alcohol on the night of the crimes, and to having been cognitive of what was happening. In accordance with La. C. Cr. P. art. 894.1, the trial judge found that there was an undue risk that defendant would commit another crime during a period of suspended sentence or probation, that the defendant had need of correctional treatment in a custodial environment, and that lesser sentences would deprecate the seriousness of the crimes. Noting that defendant had never been convicted of a felony, the court found there to be "nothing in the record that might justify defendant's conduct, nor are there any mitigating circumstances which would justify a lenient sentence." Furthermore, the trial judge noted that the defendant had "shown a total disregard for other people's rights to life, property, and human dignity."
We find that the trial court's reasons provide sufficient justification for consecutive sentences. The defendant committed a vicious, violent crime against a young woman seeking shelter. His actions in the rape, robbery, and burglary evidence a particular disregard for individuals and society. We find no merit in this assignment of error as the record, particularly the extensive factual basis for sentencing articulated by the trial court, supports the consecutive sentences.

CONCLUSION
Finding no merit to any of the assignments of error asserted in this appeal, we *1282 affirm the defendant's convictions and sentences.
AFFIRMED.